# **EXHIBIT 3**

Letter from Mike Hunter to Glenda Owens
April 16, 2021



# MIKE HUNTER
## ATTORNEY GENERAL

April 16, 2021

Glenda H. Owens, Deputy Director
Office of Surface Mining Reclamation and Enforcement
United States Department of the Interior
1849 C Street NW
Washington, DC 20240

Dear Ms. Owens,

I am writing in response to your letters and press release dated April 2, 2021 asserting exclusive federal jurisdiction over surface coal mining and reclamation activities on certain lands in Oklahoma lands subject to the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2479 (2020). On review, it appears OSMRE's assertion of sole and exclusive jurisdiction is not well-supported by the legal citations offered in your letters.

*McGirt* held that the state lacked jurisdiction to prosecute a crime committed by an Indian pursuant to 18 U.S.C. § 1153 because the crime occurred on lands that constituted an Indian reservation under 18 U.S.C. § 1151(a). But courts "long ago" abandoned the idea that Indian reservations are categorically exempt from state jurisdiction for all purposes. *Nevada v. Hicks*, 533 U.S. 353, 361 (2001). "'Ordinarily,' it is now clear, 'an Indian reservation is considered part of the territory of the State.'" *Id.* at 361-62. This inherent authority can only be adjusted by Congress. *See id.* at 365.

Use of Congress's preemption power is also not lightly inferred. Courts apply a presumption against preemption of "the historic police powers of the States," requiring a "clear and manifest purpose of Congress" in order to find preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Furthermore, Congress faces limits in abrogating a State's civil jurisdiction over Indian reservations. Although the Indian Commerce Clause of the U.S. Constitution gives Congress some power to alter State jurisdiction, it does not permit Congress to "interfere with the . . . operation of State laws upon [non-Indians] found there." *Nevada*, 533 U.S. at 363 (quoting *United States v. Kagama*, 118 U.S. 375, 383 (1886)).

Your analysis ignores these legal doctrines. To start, your letters appear to rely on the false assumption that States lack civil jurisdiction over Indian lands without federal approval. You write about whether your agency "grant[ed] a State regulatory authority over Indian lands within its boundaries" or whether your agency has "authority to confer on the State of Oklahoma jurisdiction" over Indian lands. Both statements reflect an incorrect understanding of state jurisdiction. Absent a statute stripping the state of jurisdiction, Oklahoma has inherent authority on the Creek reservation regardless of the actions of your agency.


recycled paper

Your letters also assume preemption of state jurisdiction without citing any statute indicating a clear and manifest purpose of Congress to enact such preemption. Nothing in the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201-1328, indicates such an intent with Indian lands. To the contrary, the SMCRA says that nothing in it should be construed to change the jurisdictional status of Indian lands, which preserves the State's inherent authority. *See* 30 U.S.C. § 1300(h). The SMCRA otherwise leaves undecided the question of who has authority to enforce mining requirements on Indian lands outside of the limited issue of leases. *See id.* § 1300. For example, Section 1300(d) requires that "all surface coal mining operations on Indian lands shall comply with requirements at least as stringent as those imposed" in specific sections of the SMCRA, but it does not specify the governmental entity that may ensure such compliance. The State has in fact been the entity ensuring such compliance. At most, the Secretary of the Interior only has responsibility for ensuring that these statutory requirements are incorporated into all existing and new leases for coal on Indian lands. *Id.*

Thus, your statement that "SMCRA designates OSMRE as the regulatory authority . . . on Indian lands," is false. The SMCRA also specifies that only § 1300 applies to Indian lands. *See id.* § 1273(a). This prohibition appears in the section regarding federal lands, making clear that Congress was not treating Indian lands like federal lands. *See id.* This collection of statutes preserving the jurisdictional status of Indian lands and treating them separately from federal lands does not demonstrate a clear and manifest purpose of Congress to divest the state of jurisdiction.

Your letters also fail to distinguish between Indian-owned and non-Indian-owned mines within the lands at issue in *McGirt*. Congress cannot strip states of jurisdiction over non-Indians merely because they act on Indian lands. *See Nevada*, 533 U.S. at 363 (quoting *Kagama*, 118 U.S. at 383). Your letters do not clarify whether you believe all of the mines in the Creek Nation's historic treaty lands are Indian-owned or whether you are construing the SMCRA to give you exclusive jurisdiction over non-Indians on Indian land. If you intended the latter reading, you would be advancing an impermissible construction of the statute.

Your letters also fail to explain why your demand for jurisdictional transfer would survive equitable defenses. Your decades-long delay in asserting this jurisdiction in Oklahoma would mean that laches bars your claim even if OSMRE would have had a claim long ago. *See City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217 (2005). Indeed, OSMRE has not only delayed its jurisdictional claim but also long acquiesced in Oklahoma's jurisdiction over mines throughout Oklahoma. That acquiescence bars your jurisdiction regardless of whether the federal government was correct in its reasons for that acquiescence. *See id.* at 218. Your letters address none of these barriers to your jurisdiction. At most, they are an admission of your agency's dereliction, whereas the state has responsibly regulated these lands for decades.

There is also no practical reason to prefer federal jurisdiction here. While Congress imposed certain federal minimum requirements on Indian lands, Oklahoma law is at least as stringent as federal law, satisfying those requirements. *Compare* 30 U.S.C. §§ 1235(a), 1253(a), 1300(d) *with* 30 C.F.R. Ch. VII, Subch. T, Pt. 936. Thus, the portions of SMCRA relevant to Indian lands are currently satisfied through state supervision. The presumption against preemption does not forbid such state action, equity favors the State continuing such activities, and nothing in federal law requires the "transfer" of regulatory authority and records your letters demand.

Accordingly, because your demand appears to have no adequate basis in law, I am advising that no state agency should comply with it without further discussion. I am available if you would like to further discuss these matters.

Sincerely,



Mike Hunter
OKLAHOMA ATTORNEY GENERAL

CC:   Alfred Clayborne, Regional Director, OSMRE

Joseph Maki, Tulsa Field Office Director, OSMRE

U.S. Senator Jim Inhofe

U.S. Senator James Lankford

U.S. Representative Kevin Hern

U.S. Representative Markwayne Mullin

U.S. Representative Frank Lucas

U.S. Representative Tom Cole

U.S. Representative Stephanie Bice

Secretary Kenneth E. Wagner, Oklahoma Secretary of Energy

Secretary Blayne Arthur, Oklahoma Secretary of Agriculture

Trey Lam, Executive Director, Oklahoma Conservation Commission

Mary Ann Pritchard, Director, Oklahoma Department of Mines