IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

STATE OF OKLAHOMA, *et al.*,

               Plaintiffs,

               v.

UNITED STATES DEPARTMENT OF
THE INTERIOR, *et al.*,

               Defendants

_____

Case No. CIV-21-0719-F

## FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    I.    The Surface Mining Control and Reclamation Act of 1977 ........................ 2

          A.    SMCRA's distribution of authority .................................................... 4

               1.    Regulation and reclamation on lands within a State .............. 4

               2.    Regulation and reclamation on Federal lands ....................... 5

               3.    Regulation and reclamation on Indian lands .......................... 5

          B.    Grant funding for State programs .................................................... 7

          C.    Oklahoma's State programs ............................................................. 7

    II.    The Supreme Court's decision in *McGirt* ..................................................... 8

    III.    SMCRA compelled OSMRE to act in light of the *McGirt* decision ............. 9

          A.    OSMRE informed Oklahoma that it was assuming jurisdiction ........ 9

          B.    Status of Oklahoma's grants .......................................................... 11

STANDARD OF REVIEW ................................................................................... 13

ARGUMENT ....................................................................................................... 14

    I.    Oklahoma is not likely to succeed on the merits of its claims ................... 14

          A.    SMCRA and *McGirt* dictate that only OSMRE may exercise jurisdiction within the Muscogee Reservation ................................. 15

               1.    Following *McGirt*, the Muscogee Reservation constitutes "Indian lands" under SMCRA ............................ 15

               2.    SMCRA and Federal regulations mandate that OSMRE regulate surface coal mining and reclamation operations on Indian lands ................................................................. 18

                     a)    SMCRA's plain text grants authority to OSMRE, and explicitly excludes State authority, on Indian lands ......................................................................... 18

b) Federal regulations designate OSMRE, not the States, as the regulatory authority on Indian lands .... 21

c) Congress intended OSMRE, not the States, to regulate on Indian lands in the absence of a tribal program .................................................................. 23

B. "Fundamental principles of equity" do not alter this result ............ 24

C. Oklahoma cannot succeed on its claims that OSMRE violated the APA .................................................................................. 27

1. OSMRE's challenged actions are not "agency actions" reviewable under the APA ..................................................... 27

2. OSMRE's actions are in accordance with law—*McGirt* and SMCRA—and therefore not arbitrary or capricious ...... 29

3. The Court lacks jurisdiction to review the alleged "rulemaking" ......................................................................... 30

II. The public interest, tribal interests, and the interests of the federal government all weigh heavily against an injunction ................................... 32

1. The public interest favors complying with the law .......................... 32

2. The United States', the public's, and the Muscogee (Creek) Nation's interests disfavor an injunction .......................................... 33

III. Oklahoma has not demonstrated that it would be irreparably harmed ........ 37

IV. Oklahoma should be required to post a bond ............................................... 39

CONCLUSION ............................................................................ 40

## TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ................................................... 38

*Alaska v. Native Vill. of Venetie Tribal Gov't*,
  522 U.S. 520 (1998) ............................................................... 16

*Am. Min. Cong. v. U.S. E.P.A.*,
  965 F.2d 759 (9th Cir. 1992) ................................................... 36

*Amalgamated Sugar Co. v. Bergland*,
  664 F.2d 818 (10th Cir. 1981) ................................................. 28

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015) ............................................................... 25

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
  462 U.S. 87 (1983) ................................................................. 29

*Blakely v. United States*,
  276 F.3d 853 (6th Cir. 2002) ................................................... 27

*Bragg v. W.V. Coal Ass'n*,
  248 F.3d 275 (4th Cir. 2001) ................................................... 38

*Carcieri v. Salazar*,
  555 U.S. 379 (2009) ............................................................... 19

*Cayuga Indian Nation of New York v. Pataki*,
  413 F.3d 266 (2d Cir. 2005) ............................................... 24, 26

*Cayuga Nation v. Tanner*,
  6 F.4th 361 (2d Cir. 2021) ...................................................... 17

*City of Sherrill v. Oneida Indian Nation of New York*,
  544 U.S. 197 (2005) ............................................................... 24

*Colorado v. U.S. E.P.A.*,
  989 F.3d 874 (10th Cir. 2021) ................................................. 38

*Coquina Oil Corp. v. Transwestern Pipeline Co.*,
  825 F.2d 1461 (10th Cir. 1987) ............................................... 40

*DeCoteau v. Dist. Cty. Ct. for Tenth Jud. Dist.*,
  420 U.S. 425 (1975) ............................................................... 16

*Diné Citizens Against Ruining Our Env't v. Jewell*,
  839 F.3d 1276 (10th Cir. 2016) ............................................... 13

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016) ................................................................... 33

*Hagen v. Utah*,
  510 U.S. 399 (1994) ................................................................................... 17

*Heideman v. S. Salt Lake City*,
  348 F.3d 1182 (10th Cir. 2003) ................................................................. 33

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*,
  452 U.S. 264 (1981) ................................................................. 2, 3, 4, 19, 39

*Hogner* v. *Oklahoma*,
  No. F-2018-138, 2021 WL 958412 (Okla. Ct. Crim. App. March 11, 2021) ............... 9

*Homans v. City of Albuquerque*,
  264 F.3d 1240 (10th Cir. 2001) ................................................................. 32

*Ill. Citizens Comm. for Broad. v. Fed. Commc'ns Comm'n*,
  515 F.2d 397 (D.C. Cir. 1974) ................................................................... 28

*In re Permanent Surface Mining Regul. Litig.*,
  617 F.2d 807 (D.C. Cir. 1980) ..................................................................... 3

*In re Surface Mining Regul. Litig.*,
  627 F.2d 1346 (D.C. Cir. 1980) ............................................................. 20, 24

*Indep. Equip. Dealers Ass'n v. U.S. E.P.A.*,
  372 F.3d 420 (D.C. Cir. 2004) ................................................................... 27

*Indian Country, U.S.A., Inc. v. State of Okl. ex rel. Oklahoma Tax Comm'n*,
  829 F.2d 967 (10th Cir. 1987) ................................................................... 16

*Kansas ex rel. Schmidt v. Zinke*,
  861 F.3d 1024 (10th Cir. 2017) ................................................................. 27

*Kansas v. United States*,
  249 F.3d 1213 (10th Cir. 2001) ................................................................. 38

*Lake Carriers' Ass'n v. U.S. E.P.A.*,
  652 F.3d 1 (D.C. Cir. 2011) ....................................................................... 32

*Martin v. Hunter's Lessee*,
  14 U.S. 304 (1816) .................................................................................... 15

*Mattz v. Arnett*,
  412 U.S. 481 (1973) .................................................................................. 17

*McGirt v. Oklahoma*,
  591 U.S. ___, 140 S. Ct. 2452 (2020) ............................................ 1, 8, 15, 16, 25

iv

*Md. Dep't of Hum. Res. v. U.S. Dep't of Agric.*,
  976 F.2d 1462 (4th Cir. 1992) ........................................................ 40

*Metzenbaum v. Fed. Energy Regul. Comm'n*,
  675 F.2d 1282 (D.C. Cir. 1982) ...................................................... 32

*Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*,
  619 F.3d 1289 (11th Cir. 2010) ...................................................... 27

*Midwest Crane & Rigging, Inc. v. Fed. Motor Carrier Safety Admin.*,
  603 F.3d 837 (10th Cir. 2010) ........................................................ 21

*Miller v. French*,
  530 U.S. 327 (2000) ......................................................................... 26

*Montana v. Clark*,
  749 F.2d 740 (D.C. Cir. 1984) ............................................... 6, 21, 24

*N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*,
  854 F.3d 1236 (10th Cir. 2017) .................................................. 37, 39

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ......................................................................... 21

*Nat'l Mining Ass'n v. U.S. Dep't of Interior*,
  70 F.3d 1345 (D.C. Cir. 1995) .......................................................... 3

*Nevada v. Hicks*,
  533 U.S. 353 (2001) ......................................................................... 19

*New Mexico ex rel. Energy & Minerals Dep't, Min. & Minerals Div. v. U.S. Dep't of the Interior*,
  820 F.2d 441 (D.C. Cir. 1987) ..................................................... 6, 19

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................... 32

*Ohio River Valley Env't Coal., Inc. v. Kempthorne*,
  473 F.3d 94 (4th Cir. 2006) ............................................................ 31

*Oneida Indian Nation of New York v. County of Oneida*,
  617 F.3d 114 (2d Cir. 2010) ...................................................... 24, 25

*Oneida Nation v. Vill. of Hobart*,
  968 F.3d 664 (7th Cir. 2020) .......................................................... 17

*Organized Vill. of Kake v. Egan*,
  369 U.S. 60 (1962) ........................................................................... 19

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,
  636 F.3d 1150 (9th Cir. 2011) ......................................................................... 33

*Prairie Band of Potawatomi Indians v. Pierce*,
  253 F.3d 1234 (10th Cir. 2001) ...................................................................... 34

*Printz v. United States*,
  521 U.S. 898 (1997) .......................................................................................... 3

*Rattlesnake Coal. v. U.S. E.P.A.*,
  509 F.3d 1095 (9th Cir. 2007) ......................................................................... 29

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) ................................................................. 13, 38

*Safe Streets All. v. Hickenlooper*,
  859 F.3d 865 (10th Cir. 2017) ......................................................................... 25

*Sanders v. Mountain Am. Fed. Credit Union*,
  689 F.3d 1138 (10th Cir. 2012) ...................................................................... 25

*Save Our Cumberland Mountains, Inc. v. Lujan*,
  963 F.2d 1541 (D.C. Cir. 1992) ...................................................................... 31

*Senior Execs. Ass'n v. United States*,
  No. 8:12-CV-02297-AW, 2013 WL 1316333 (D. Md. Mar. 27, 2013) ............... 27, 28

*Sizemore* v. *Oklahoma*,
  No. F-2018-1140, 2021 WL 1231493 (Okla. Crim. App. April. 1, 2021) ............... 9

*State of Alabama ex rel. Siegelman v. U.S. E.P.A.*,
  925 F.2d 385 (11th Cir. 1991) ........................................................................ 40

*United States v. Distefano*,
  279 F.3d 1241 (10th Cir. 2002) ...................................................................... 26

*United States v. Gonzales*,
  520 U.S. 1 (1997) ............................................................................................ 23

*United States v. Navajo Nation*,
  556 U.S. 287 (2009) ..................................................................................... 3, 20

*United States v. Oakland Cannabis Buyers' Co-op.*,
  532 U.S. 483 (2001) .................................................................................. 26, 33

*United States v. Tri-No Enters., Inc.*,
  819 F.2d 154 (7th Cir. 1987) ............................................................................ 3

*Ute Indian Tribe of Uintah v. Myton*,
  835 F.3d 1255 (10th Cir. 2016) ...................................................................... 26

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) .................................................................................. 32

*Wilderness Workshop v. Bureau of Land Mgmt.,*
    531 F.3d 1220 (10th Cir. 2008) ............................................................... 13

*Winnebago Tribe of Neb. v. Stovall,*
    216 F. Supp. 2d 1226 (D. Kan. 2002) ..................................................... 39

*Winnebago Tribe of Neb. v. Stovall,*
    341 F.3d 1202 (10th Cir. 2003) ............................................................... 40

*Winter v. Nat. Res. Def. Council,*
    555 U.S. 7 (2008) ..................................................................................... 13

*Wyandotte Nation v. Sebelius,*
    443 F.3d 1247 (10th Cir. 2006) ............................................................... 34

**Statutes**

18 U.S.C. § 1151 .............................................................................................. 18

18 U.S.C. § 1151(a) ......................................................................................... 16

30 U.S.C. § 1201(f) ........................................................................................... 3

30 U.S.C. § 1211(a) ........................................................................................... 3

30 U.S.C. § 1211(c)(1) .................................................................................... 20

30 U.S.C. § 1231(f) ........................................................................................... 7

30 U.S.C. § 1232(a) ........................................................................................... 5

30 U.S.C. § 1232(g) ........................................................................................... 7

30 U.S.C. § 1232(g)(1) .................................................................................. 5, 7

30 U.S.C. § 1232(g)(3)(C) ........................................................................... 6, 20

30 U.S.C. § 1235(a) ........................................................................................... 7

30 U.S.C. § 1235(b) ..................................................................................... 5, 20

30 U.S.C. § 1235(c) ........................................................................................... 7

30 U.S.C. § 1235(k) ..................................................................... 5, 6, 20, 33

30 U.S.C. § 1240a(h) ........................................................................................ 7

30 U.S.C. § 1253 ...................................................................................... 3, 4, 19

30 U.S.C. § 1253(a) ..................................................................................... 4, 19

30 U.S.C. § 1254(a) ..................................................................................... 31

30 U.S.C. § 1256(a) ..................................................................................... 19

30 U.S.C. § 1259 .......................................................................................... 36

30 U.S.C. § 1267 ............................................................................................ 3

30 U.S.C. § 1271 ............................................................................................ 3

30 U.S.C. § 1273 ............................................................................................ 4

30 U.S.C. § 1273(a) .................................................................................. 5, 19

30 U.S.C. § 1273(c) .................................................................................... 5, 8

30 U.S.C. § 1276(a) ..................................................................................... 30

30 U.S.C. § 1276(a)(1) ................................................................................ 31

30 U.S.C. § 1291 ...................................................................................... 4, 15

30 U.S.C. § 1291(11) ................................................................................ 4, 19

30 U.S.C. § 1291(25) ................................................................................ 4, 19

30 U.S.C. § 1291(4) ....................................................................................... 8

30 U.S.C. § 1291(5) ....................................................................................... 5

30 U.S.C. § 1291(6) ....................................................................................... 4

30 U.S.C. § 1291(9) .................................................................................. 6, 17

30 U.S.C. § 1295 .......................................................................................... 38

30 U.S.C. § 1295(a) ....................................................................................... 7

30 U.S.C. § 1295(c) ....................................................................................... 7

30 U.S.C. § 1300 ...................................................................................... 4, 19

30 U.S.C. § 1300(a) ....................................................................................... 6

30 U.S.C. § 1300(a)-(b) ............................................................................... 23

30 U.S.C. § 1300(c)-(d) ............................................................................... 20

30 U.S.C. § 1300(c)-(e) ................................................................................. 6

30 U.S.C. § 1300(e) ..................................................................................... 20

30 U.S.C. § 1300(j) .................................................................................. 6, 20

30 U.S.C. § 1300(j)(1) ................................................................................. 33

31 U.S.C. § 1301(a) ..................................................................... 28

5 U.S.C. § 706(2)(A) ................................................................... 29

**Rules**

Fed. R. Civ. P. 65(c) ................................................................... 40

**Regulations**

2 C.F.R. §§ 200.334–200.338 ..................................................... 35

30 C.F.R. § 701.4(h) ................................................................... 21

30 C.F.R. § 733.13 ...................................................................... 31

30 C.F.R. § 733.13(b) ................................................................. 31

30 C.F.R. § 735.14(b) ................................................................. 28

30 C.F.R. § 735.15 ...................................................................... 38

30 C.F.R. § 735.15(a)(3) ............................................................... 7

30 C.F.R. § 735.15(b)(4) ............................................................... 7

30 C.F.R. § 735.17 ........................................................................ 7

30 C.F.R. § 735.18 ........................................................................ 7

30 C.F.R. § 750.1 .......................................................................... 6

30 C.F.R. § 750.1 ........................................................................ 22

30 C.F.R. § 750.6 .......................................................................... 6

30 C.F.R. § 750.6(a)(1) ............................................................... 21

30 C.F.R. § 800.11 ...................................................................... 36

30 C.F.R. § 800.40 ...................................................................... 36

30 C.F.R. § 840.14(a) ................................................................. 35

30 C.F.R. § 872.14 ........................................................................ 7

30 C.F.R. § 886.12(a) ................................................................. 28

30 C.F.R. § 886.15(c) ................................................................. 30

30 C.F.R. § 886.27 .................................................................. 6, 22

30 C.F.R. § 936.30 ........................................................................ 8

Okla. Admin. Code § 460:20-3-5 ............................................... 23

Okla. Admin. Code § 460:20-3-6 ....................................................... 23

Okla. Admin. Code § 460:20-15-3 ..................................................... 23

**Other Authorities**

43 Fed. Reg. 41,662 (Sept. 18, 1978) ................................................ 21

46 Fed. Reg. 4902 (Jan. 19, 1981) ..................................................... 22

47 Fed. Reg. 14,152 (Apr. 2, 1982) ..................................................... 7

47 Fed. Reg. 2989 (Jan. 21, 1982) ....................................................... 8

49 Fed. Reg. 14,674-01 (Apr. 12, 1984) ............................................ 31

49 Fed. Reg. 38,462 (Sept. 28, 1984) ................................................ 22

70 Fed. Reg. 16,941 (Apr. 4, 2005) .............................................. 8, 22

70 Fed. Reg. 60,481 (Oct. 18, 2005) .................................................. 22

77 Fed. Reg. 25,872 (May 2, 2012) ................................................... 22

86 Fed. Reg. 26,941 (May 18, 2021) ........................................... 10, 29

H.R. Rep. No. 95-218 at 134–35 (1977) ............................................ 23

S. Rep. No. 402 (1973) ....................................................................... 23

S. Rep. No. 95-218 (1977) .................................................................. 24

Treaty with the Creek Nation of Indians, art. 14, Mar. 24, 1832, 7 Stat. 366 (1832 Treaty) ......................................................................................................... 8

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | June 17, 2021 Letter to ODM |
| 2 | June 17, 2021 Letter to OCC |
| 3 | June 2, 2021 Letter from Dep't of the Interior to Oklahoma's Attorney General |
| 4 | Declaration of Joseph Maki and Exhibit A (map of surface coal mining operations and AML reclamation sites) |
| 5 | Declaration of Yolande Norman-Moore |
| 6 | Declaration of Alfred L. Clayborne |
| 7 | Declaration of Mychal Yellowman |
| 8 | Declaration of Paul Fritsch |
| 9 | Aug. 25, 2021 Letter to ODM |
| 10 | Aug. 25, 2021 Letter to OCC |
| 11 | Sept. 10, 2021 Letter from Oklahoma's Attorney General |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| AML | Abandoned Mine Lands |
| APA | Administrative Procedure Act |
| FRP | Federal Reclamation Program |
| FY | Fiscal year |
| IGRA | Indian Gaming Regulatory Act |
| Muscogee Reservation | Lands within the reservation boundaries established by treaty for the Muscogee (Creek) Nation |
| OCC | Oklahoma Conservation Commission |
| ODM | Oklahoma Department of Mines |
| OSMRE | Office of Surface Mining Reclamation and Enforcement |
| SMCRA | Surface Mining Control and Reclamation Act of 1977 |

## INTRODUCTION

Last year, the Supreme Court held that the reservation boundaries established by treaty for the Muscogee (Creek) Nation (the "Muscogee Reservation") remained intact. *McGirt v. Oklahoma*, 591 U.S. ___, 140 S. Ct. 2452 (2020). In light of that decision, all lands within that reservation boundary constitute "Indian lands" as defined by the Surface Mining Control and Reclamation Act of 1977 (SMCRA). SMCRA and Federal regulations unambiguously assign jurisdiction to regulate surface coal mining and reclamation operations on Indian lands to the Office of Surface Mining Reclamation and Enforcement (OSMRE)—and just as explicitly deprive Oklahoma of authority to exercise such jurisdiction. On April 2, 2021, OSMRE informed Oklahoma that only OSMRE could exercise this authority on lands within the Muscogee Reservation.[1] Instead of cooperating with OSMRE to ensure a smooth, statutorily-mandated transition, Oklahoma asks this Court to ignore the Supreme Court's decision and Congress's express instruction in SMCRA and instead allow Oklahoma to exercise regulatory and Abandoned Mine Lands (AML) reclamation authority in clear violation of Federal law.

The Court should reject Oklahoma's request for a preliminary injunction.

---

[1] Though OSMRE notified the State that it was the regulatory and AML reclamation authority within the Muscogee Reservation on April 2, Oklahoma waited several months—until July 19, 2021—to bring this action. Oklahoma has now filed a second action challenging OSMRE's SMCRA jurisdiction over Indian lands in Oklahoma—this time, over the land recognized by the Oklahoma Court of Criminal Appeals as reserved to the Cherokee Nation and the Choctaw Nation of Oklahoma. *See Oklahoma v. U.S. Dep't of the Interior*, No. 5:21-cv-805-F (W.D. Okla. filed Aug. 16, 2021). Because Oklahoma asserts effectively the same claims and raises the same legal arguments in that action as in this, Federal Defendants have moved to consolidate the two cases. *See* Mot. to Consolidate, ECF No. 19.

Oklahoma cannot demonstrate any possibility of success on the merits of its claim that it retains SMCRA jurisdiction within the Muscogee Reservation because *McGirt* coupled with the plain language of SMCRA preclude that outcome. The State also cannot succeed on the merits of its claims under the Administrative Procedure Act (APA) because OSMRE's actions are not reviewable "agency actions" under the APA. Even if they were, OSMRE's actions complied with applicable federal law and SMCRA deprives this Court of jurisdiction to hear any procedural challenges.

Nor can Oklahoma satisfy the other elements of the preliminary injunction standard. The public interest and the interest of the United States weigh heavily in favor of following the law as determined by the Supreme Court. Oklahoma's sovereignty cannot be harmed by an inability to exercise authority that it does not have, as a matter of law. In any event, the extraordinary relief sought by Oklahoma must be weighed against the sovereignty interests of both the United States and the Muscogee (Creek) Nation. And OSMRE's readiness and ability to regulate on Indian lands in Oklahoma undermines any other harms or uncertainty that the State alleges would occur if it does not do so. Accordingly, the Court should deny Oklahoma's motion for a preliminary injunction.

## BACKGROUND

## I.     The Surface Mining Control and Reclamation Act of 1977

SMCRA "is a comprehensive statute designed to 'establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations.'" *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 268 (1981) (quoting 30 U.S.C. § 1202(a) (1976)). It "regulates all surface coal mining

operations" in the United States, *United States v. Navajo Nation*, 556 U.S. 287, 300 (2009), rendering the regulation of surface coal mining a "pre-empted field," *Printz v. United States*, 521 U.S. 898, 926 (1997). SMCRA charges the Secretary of the Interior, acting through OSMRE, with "primary responsibility for administering and implementing the Act . . ." *Hodel*, 452 U.S. at 268–69; 30 U.S.C. § 1211(a), (c).

SMCRA allows States to assume responsibility for regulation of surface coal mining and reclamation operations on non-Federal, non-Indian lands through State programs reviewed and approved by the Secretary. *In re Permanent Surface Mining Regul. Litig.*, 617 F.2d 807, 808 (D.C. Cir. 1980) (per curiam); 30 U.S.C. § 1201(f). States may obtain this "primacy" by establishing a State regulatory program pursuant to 30 U.S.C. § 1253. Once a State program is approved, OSMRE's role shifts to one of oversight and backup enforcement authority. 30 U.S.C. §§ 1267, 1271; *see also Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1347 (D.C. Cir. 1995).

To achieve SMCRA's ends, Congress established two major programs. Title V of SMCRA, 30 U.S.C. §§ 1251–1279, regulates ongoing mining and requires mine operators "to control the environmental harm their operations may cause." *United States v. Tri-No Enters., Inc.*, 819 F.2d 154, 157 (7th Cir. 1987). Title IV, 30 U.S.C. §§ 1231–1244, established an Abandoned Mine Reclamation Fund that provides money "to reclaim and restore land and water resources adversely affected" by mining that occurred prior to the enactment of SMCRA in 1977. *Tri-No Enters.*, 819 F.2d at 156 (citing 30 U.S.C. § 1231).

A.      SMCRA's distribution of authority

SMCRA establishes three mutually exclusive regulatory schemes based on whether regulated lands are classified as one of "Indian lands," "Federal lands," or lands within a State. 30 U.S.C. §§ 1300, 1253, 1273, 1291; *see also Hodel*, 452 U.S. at 271 & n.6; *Valencia Energy Co*., 109 IBLA 40, 45 (May 26, 1989) ("Under the structure of SMCRA, any parcel of land is subject to one of three possible classifications.")

1.      Regulation and reclamation on lands within a State

SMCRA provides for both State and Federal regulation of surface coal mining and reclamation on "lands within [a] State"—that is, "all lands within a State *other than Federal lands and Indian lands*." 30 U.S.C. § 1291(11), (25) (emphasis added). Under Title V, a State may submit to the Secretary of the Interior "a State program which demonstrates that such State has the capability of carrying out the provisions of [SMCRA] and meeting its purposes . . . ." *Id.* § 1253(a). A "State program" is "a program established by a State pursuant to [30 U.S.C. § 1253] to regulate surface coal mining and reclamation operations, *on lands within such State* . . . ." *Id.* § 1291(25) (emphasis added).

If a State fails to submit a program or fails to implement or enforce its program, the Secretary may "promulgate and implement a Federal program" for that State. *Id.* § 1254(a). Like a State program, a Federal program is geographically limited and is specifically one "established by the Secretary pursuant to [30 U.S.C. § 1253] to regulate surface coal mining and reclamation operations on lands within a State"—that is, again, non-Federal and non-Indian lands. *Id.* § 1291(6), (11).

4

Title IV of SMCRA also allows a State to operate an AML reclamation plan only on lands that exclude "Indian lands." To enact such a program, a State may submit for approval "a State Reclamation Plan." *Id.* § 1235(b). Title IV also provides that Indian tribes "shall be considered as a 'State' for the purposes of" Tile IV, *id.* § 1235(k), and allots reclamation fees charged on each ton of coal produced, *id.* § 1232(a), to States or Indian tribes separately depending on whether the fees were collected in the State or "with respect to Indian lands," *id.* § 1232(g)(1). Nothing in Title IV affords a State jurisdiction over "Indian lands."

### 2.    Regulation and reclamation on Federal lands

SMCRA authorizes the Secretary to "promulgate and implement a Federal lands program" that applies "to all surface coal mining and reclamation operations taking place pursuant to any Federal law on any Federal lands." *Id.* §§ 1273(a), 1291(5). With exceptions not relevant here, SMCRA defines "Federal lands" as "any land, including mineral interests, owned by the United States . . . *except Indian lands . . . .*" *Id.* § 1291(4) (emphasis added). States with an approved State program may enter into a cooperative agreement with OSMRE to regulate surface coal mining operations on Federal lands located within the State, but not on Indian lands. *See id.* § 1273(a), (c).

### 3.    Regulation and reclamation on Indian lands

Finally, SMCRA provides an entirely separate regime for regulation of surface coal mining and reclamation operations on "Indian lands," which it defines to include "all lands, including mineral interests, *within the exterior boundaries of any Federal Indian reservation* . . . and all lands including mineral interests held in trust for or supervised by

an Indian tribe." *Id.* § 1291(9) (emphasis added).

**Title IV reclamation**. From its enactment, SMCRA authorized Indian tribes to establish reclamation plans under Title IV on Indian lands. *Id.* § 1235(k); *see also Montana v. Clark*, 749 F.2d 740, 748 (D.C. Cir. 1984). Absent such a program, SMCRA reserves to OSMRE the authority to operate a Federal Reclamation Program on Indian lands. 30 U.S.C. § 1232(g)(3)(C); *see also* 30 C.F.R. § 886.27 (specifying procedure for "Indian lands not subject to an approved Tribal reclamation program.").

**Title V regulation**. Congress initially "postponed resolution of the question" of surface coal mining regulation on Indian lands under Title V, instead directing the Secretary to prepare a report and propose legislation allowing for tribes "to elect to assume full regulatory authority" over the same. *Montana*, 749 F.2d at 749 (quoting 30 U.S.C. § 1300(a)). As amended in 2006, SMCRA authorizes Indian tribes to obtain approval of tribal programs for "regulating in whole or in part surface coal mining and reclamation operations on reservation land under the jurisdiction of the tribe," using the same procedures through which a State may obtain primacy and regulate "lands within [a] State." 30 U.S.C. § 1300(j).

Absent a tribal Title V program, OSMRE, as the "regulatory authority on Indian lands," 30 C.F.R. § 750.6, administers a "Federal program for Indian lands," *id.* § 750.1*; see also* 30 U.S.C. § 1300(c)-(e). OSMRE cannot delegate, and never has delegated, such authority to any State. *See, e.g.*, *New Mexico ex rel. Energy & Minerals Dep't, Min. & Minerals Div. v. U.S. Dep't of the Interior*, 820 F.2d 441, 445 (D.C. Cir. 1987).

6

**B.      Grant funding for State programs**

SMCRA authorizes OSMRE to make grants to States to assist them "in

developing, administering, and enforcing" their State programs. 30 U.S.C. § 1295(a). To

obtain funding for a Title V program, a State must apply in each fiscal year prior to the

beginning of the intended grant period. *See* 30 C.F.R. § 735.18. OSMRE may approve

grants of no more than 50 percent of the agreed-to program costs or costs of program

administration and enforcement for lands within a State. 30 U.S.C. § 1235(a); 30 C.F.R.

§ 735.15(a)(3), (b)(4). In addition, OSMRE may approve grants up to 100 percent for

State costs associated with regulating Federal lands under a cooperative agreement.

30 U.S.C. § 1295(c). Grants may be approved for a "period of one year or less."

30 C.F.R. § 735.17.

OSMRE also funds State AML reclamation programs through grants, consistent

with Title IV. *See, e.g.*, 30 U.S.C. §§ 1232(g), 1235(c). AML funding for each State or

Tribe is determined by a formula that relies significantly on the amount of the

reclamation fees that OSMRE collects within a State or on Indian lands; this formula

explicitly excludes States from receiving "fees collected on Indian lands." *Id.*

§ 1232(g)(1); 30 C.F.R. § 872.14; *see also* 30 U.S.C. §§ 1231(f), 1240a(h).

**C.      Oklahoma's State programs**

OSMRE fully approved Oklahoma's State program under Title V in 1982. 47 Fed.

Reg. 14,152 (Apr. 2, 1982). In doing so, the Secretary explicitly limited Oklahoma's

State program approval only to "non-Federal and non-Indian lands in Oklahoma . . . ." *Id.*

at 14,153. No amendment to that program has ever authorized the State to regulate

surface coal mining operations on "Indian lands."[2] The Oklahoma Department of Mines (ODM) administers Oklahoma's Title V program.

OSMRE also approved Oklahoma's AML reclamation program in 1982. 47 Fed. Reg. 2989 (Jan. 21, 1982). Nothing in Oklahoma's approved AML program provided Oklahoma with jurisdiction over AML reclamation activities on Indian lands. In 2005, OSMRE reiterated that Oklahoma's AML reclamation program does not apply to Indian lands. 70 Fed. Reg. 16,941 (Apr. 4, 2005). The Oklahoma Conservation Commission (OCC) administers that program.

## II.     The Supreme Court's decision in *McGirt*

The United States relocated the Muscogee (Creek) Nation in the 1800s, establishing by treaty a new reservation for the Nation in what is now Oklahoma. Treaty with the Creek Nation of Indians, Mar. 24, 1832, 7 Stat. 366 (1832 Treaty). That Treaty provided assurances that "that their new lands in the West would be secure forever." *McGirt*, 140 S. Ct. at 2459, 2460–61*; see also* Art. 14, 1832 Treaty, 7 Stat. 366. In light of subsequent federal statutes and historical events, the Muscogee Reservation was viewed as disestablished in the lead-up to Oklahoma statehood. But on July 9, 2020, the Supreme Court held that "Congress has never withdrawn the promised reservation." *McGirt*, 140 S. Ct. at 2482. In doing so, it concluded that disestablishing an Indian

---

[2] The cooperative agreement permitting Oklahoma to regulate surface coal mining and reclamation operations on Federal lands within the State likewise applies only to "Federal lands," 30 C.F.R. § 936.30; 30 U.S.C. § 1273(c), which exclude "Indian lands" by definition, 30 U.S.C. § 1291(4)*; see also* 30 C.F.R. § 936.30, Art. 1.B (agreement between OSMRE and Oklahoma is intended to "provide uniform and effective application of the Program on all non-Indian lands in Oklahoma . . . .").

reservation requires a clear expression of Congressional intent—and that Congress had not so provided regarding the Muscogee Reservation. *Id.* at 2463. This conclusion was an essential prerequisite to the Court's holding that the Muscogee Reservation constituted "Indian country" subject to exclusive federal jurisdiction under the Major Crimes Act. *Id.* at 2476.

## III.   SMCRA compelled OSMRE to act in light of the *McGirt* decision

The same conclusion also established, as a matter of law, that the lands within that Reservation constitute "Indian lands" for purposes of SMCRA. *McGirt* had the effect of clarifying that what the United States had previously considered "land within [a] State"— subject to Oklahoma's SMCRA regulation—were in actuality lands "within the exterior boundaries of any Federal Indian reservation," and thus "Indian lands"—over which only OSMRE exercises jurisdiction absent an approved tribal program. SMCRA thus rendered OSMRE the regulatory authority on lands within the Muscogee Reservation.

### A.   OSMRE informed Oklahoma that it was assuming jurisdiction

OSMRE informed ODM and OCC on April 2, 2021 that it was the regulatory authority under SMCRA within the Muscogee Reservation and that "the State of Oklahoma may no longer administer a SMCRA regulatory program" there.[3] Apr. 2, 2021

---

[3] Applying the reasoning of *McGirt*, the Oklahoma Court of Criminal Appeals has recognized that the reservations of the Cherokee Nation of Oklahoma and the Choctaw Nation similarly remain intact. *See Hogner* v. *Oklahoma,* No. F-2018-138, 2021 WL 958412, at *6 (Okla. Ct. Crim. App. March 11, 2021) (Cherokee Nation of Oklahoma); *Sizemore* v. *Oklahoma,* No. F-2018-1140, 2021 WL 1231493 (Okla. Crim. App. April 1, 2021) (Choctaw Nation). Following those decisions, the Cherokee and Choctaw Reservations are "Indian lands" under SMCRA. OSMRE has informed Oklahoma that

ODM Letter, ECF No. 1-1 ("Compl. Ex. 1"); Apr. 2, 2021 OCC Letter, ECF No. 1-2 ("Compl. Ex. 2"). OSMRE permitted ODM only to "maintain its routine administrative, inspection, and enforcement responsibilities" during an approximately 30-day transition period. Compl. Ex. 1 at 3. Similarly, OSMRE permitted OCC to "continue its routine reclamation program activities" and "respond to all abandoned mine land emergencies" on those lands during the same transition period. Compl. Ex. 2 at 3. OSMRE cautioned both agencies not to "undertake any action with irreversible or irreparable adverse consequences for OSMRE's abilities to administer SMCRA" within the Muscogee Reservation. Compl. Ex. 1 at 3; Compl. Ex. 2 at 3. On May 18, 2021, OSMRE published a notice in the *Federal Register* explaining the change of SMCRA jurisdiction within the Muscogee Reservation in light of *McGirt*. 86 Fed. Reg. 26,941 (May 18, 2021).

Oklahoma's Attorney General responded to OSMRE's letters, challenging OSMRE's regulatory and AML authority and reiterating arguments raised before—and rejected by—the Supreme Court in *McGirt*. He further advised State agencies not to comply with OSMRE's requests. Apr. 16, 2016 Letter, ECF No. 1-3 ("Compl. Ex. 3"). Responding on June 2, 2021, the Principal Deputy Solicitor for the United States Department of the Interior addressed the legal arguments raised by Oklahoma and again explained that ODM and OCC should "refrain from taking any action under color of state regulatory or AML authority pursuant to SMCRA within the boundaries" of the Muscogee Reservation. June 2 2021 Letter, attached as Exhibit 3. Nothing in OSMRE's

---

OSMRE is the regulatory and AML authority within those lands. June 17, 2021 Letter to ODM, attached as Exhibit 1; June 17, 2021 Letter to OCC, attached as Exhibit 2.

or Interior's letters requested or required ODM or OCC to continue their regulatory or reclamation actions within the boundaries of the Muscogee Reservation past the approximately 30-day transition period.

To the contrary, and as explained below, OSMRE itself is prepared, and has taken steps, to exercise authority over those activities within the Muscogee Reservation. *See* Declaration of Joseph Maki ¶¶ 9–18, 23–32, attached as Exhibit 4; Declaration of Yolande Norman-Moore ¶¶ 5–11, attached as Exhibit 5; Declaration of Alfred L. Clayborne ¶¶ 17–23, 38–55, attached as Exhibit 6. OSMRE can expand its extensive Federal Indian lands program to Oklahoma. Declaration of Mychal Yellowman ¶¶ 4–10, attached as Exhibit 7. Indian lands in Oklahoma are now also included in the existing OSMRE Federal Reclamation Program (FRP) for reclaiming AML sites, which would include abating AML emergencies. Clayborne Decl. ¶¶ 53–55; Norman-Moore Decl. ¶¶ 6, 10–11. In both contexts, OSMRE will commit the necessary financial and personnel resources to ensure that it meets its regulatory and reclamation responsibilities in Oklahoma. Clayborne Decl. ¶¶ 17–23, 53–55.

### B.      Status of Oklahoma's grants

In 2020 ODM applied for a Federal fiscal year (FY) 2021 grant of $1,319,217, with a performance period of January 1, 2021 through December 31, 2021. Declaration of Paul Fritsch ¶¶ 9–10, 18–19, attached as Exhibit 8. On December 21, 2020, OSMRE approved the application submitted by ODM for the total program budget and, due to funding limitations, awarded ODM three months of funding. *Id.* ¶¶ 20. On March 30, 2021, OSMRE provided supplemental funding for ODM's administrative and

enforcement costs through June 30, 2021. *Id.* ¶ 21–23. OSMRE thus approved and
awarded OSMRE a total of $661,538 in Federal funds for its administrative and
enforcement FY2021 grant, covering six months of ODM's requested grant period. *Id.*
¶ 24. But because ODM lacks authority to regulate on Indian lands in Oklahoma,
OSMRE was legally unable to disburse additional funds to ODM for the rest of the 2021
fiscal year as requested. *Id.* ¶¶ 25, 28. Rather, on August 25, 2021, OSMRE informed
ODM that it must submit a grant amendment to adjust the scope of its grant in light of
these developments before any further funds could be released. *Id.* ¶¶ 27–30; Aug. 25,
2021 Letter to ODM, attached as Exhibit 9. OSMRE has not, however, disapproved or
denied any grant application from ODM. *See* Fritsch Decl. ¶¶ 8–17.

OSMRE awarded OCC a total of $5,346,942 in grant funding for fiscal year 2020,
which covers a performance period from January 1, 2020 through June 30, 2023. Fritsch
Decl. ¶ 42. On May 13, 2021, OCC applied for a FY 2021 grant and on June 22, 2021
requested to amend its FY 2020 grant. *Id.* ¶¶ 43–44. Both the application and the
requested amendment claimed a period of performance that far exceeded the transition
timeframe set by OSMRE's April 2 and June 17, 2021 letters, so OSMRE disapproved
the grant and amendment applications. *Id.* ¶¶ 45–47. But disapproval is not a denial—
OSMRE will review OCC's application for a grant amendment but requires additional
information on the scope of OCC's AML contracts and activities to do so.[4] *Id.* ¶¶ 31–41,

---

[4] Oklahoma's Attorney General has now informed OSMRE that he has directed ODM
and OCC not to take any action in response to OSMRE's August 25, 2021 letters. Fritsch
Decl. ¶ 57; Sept. 10, 2021 Letter, attached as Exhibit 11.

48–56; Aug. 25, 2021 Letter to OCC, attached as Exhibit 10.

## STANDARD OF REVIEW

An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [petitioner] is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 31–32 (2008); *Wilderness Workshop v. BLM*, 531 F.3d 1220, 1224 (10th Cir. 2008) (movant's "right to relief must be clear and unequivocal"). Thus, Oklahoma must clearly establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. If Oklahoma fails to meet its burden on any of these four requirements, its request must be denied. *Id.* at 22–23. Following the Supreme Court's decision in *Winter*, "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).

To the extent that Oklahoma seeks to compel OSMRE to affirmatively provide federal grant funding to state agencies, *see* Pls.' Mot. for Prelim. Inj. & Br. in Supp. 37, 40, ECF No. 17 ("State's Brief"), it seeks a mandatory preliminary injunction subject to a heightened standard. Such injunctions that "require[ ] the nonmoving party to take affirmative action" are disfavored; therefore "courts should be especially cautious when granting . . . a mandatory preliminary injunction[.]" *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208–09 & n.3 (10th Cir. 2009). To obtain such an injunction a movant must "make a heightened showing" of the four standard factors. *Id.* at 1209.

**ARGUMENT**

Oklahoma has not carried its burden. SMCRA's plain language combined with the Supreme Court's decision in *McGirt* permits only OSMRE to regulate surface coal mining and reclamation operations—and precludes Oklahoma from regulating—within the Muscogee Reservation. Oklahoma therefore cannot succeed on its claims. The public interest, the interests of the Muscogee (Creek) Nation, and the interests of the United States outweigh the interests Oklahoma alleges. And Oklahoma's overstated claims of harm do not amount to irreparable injury, especially where OSMRE is prepared and able to regulate and conduct reclamation operations under SMCRA.

**I.     Oklahoma is not likely to succeed on the merits of its claims**

Oklahoma's claims rely on the premise that it, and not OSMRE, is the SMCRA regulatory authority within the Muscogee Reservation. But because *McGirt* and SMCRA combine to deny Oklahoma such authority, Oklahoma is not likely to succeed on the merits of its claim for declaratory judgment (Count 1) or its claims that OSMRE's actions were not in accordance with law under the APA or SMCRA (Counts 2 and 4). Oklahoma is also not likely to succeed on the merits of its APA claims that OSMRE's actions violated the APA's procedural requirements (Counts 2 and 5) because OSMRE's actions do not constitute reviewable "agency actions" under the APA and, even if they did, SMCRA deprives the Court of jurisdiction to review them. Finally, Oklahoma is not likely to succeed on its claim that OSMRE denied its grant applications (Count 3) because OSMRE has not taken any final agency action to reduce, deny, or otherwise

disallow any grant funding.[5]

## A.   SMCRA and *McGirt* dictate that only OSMRE may exercise jurisdiction within the Muscogee Reservation

The Supreme Court's determination that the Muscogee Reservation has never been disestablished is the "supreme law of the land." *Martin v. Hunter's Lessee*, 14 U.S. 304, 340 (1816). That decision, coupled with the plain language of SMCRA and the Federal regulations, mandates that only OSMRE may exercise jurisdiction over surface coal mining and reclamation operations within the boundaries of the Muscogee Reservation— and explicitly deprives Oklahoma of authority to do the same. Oklahoma therefore cannot succeed on the merits of any claim premised on the argument that it, and not OSMRE, is authorized to regulate within Indian lands under SMCRA.

### 1.   Following *McGirt*, the Muscogee Reservation constitutes "Indian lands" under SMCRA

The court in *New Mexico* explained that a State is precluded from exercising jurisdiction under SMCRA where: (1) a tribal reservation is established and remains intact, and (2) the lands fall under 30 U.S.C. § 1291's definition of "Indian lands." 820 F.2d at 445. *McGirt* resolves the first and Oklahoma does not dispute the second— which SMCRA equally unambiguously answers.

The Supreme Court addressed the legal status of the Muscogee Reservation in *McGirt*. After observing that Congress established the Muscogee Reservation by treaty, 140 S. Ct. at 2460–61, it determined that a reservation so established cannot be

---

[5] Oklahoma also alleges violations of its "rights to fundamental fairness and due process" (Count 6), but does not base its preliminary injunction motion on that vague claim.

disestablished without a clear expression of Congressional intent, *id.* at 2462–63. Rejecting arguments to the contrary, it concluded that Congress never disestablished the Muscogee Reservation. *Id.* at 2463–74, 2459–60. Addressing the establishment of the Muscogee Reservation was a necessary prerequisite to answering the specific issue before the Court in *McGirt*—whether the Muscogee Reservation constituted "land within the limits of any Indian reservation," 18 U.S.C. § 1151(a), and thus "Indian country" for purposes of the Major Crimes Act, *see* 140 S. Ct. at 2480.

Though it framed the question presented in *McGirt* as whether the Muscogee Reservation "remains an Indian reservation for purposes of federal criminal law," *id.* at 2459, the Court did not, as Oklahoma argues, State's Brief at 2–3, limit its recognition of the Muscogee Reservation to that context alone. In fact, the Court in *McGirt* acknowledged the opposite—that its determination that the Muscogee Reservation remains established was likely to have repercussions in other, non-criminal contexts. 140 S. Ct. at 2480 (noting that its decision "might potentially trigger a variety of federal civil statutes and rules"); *id.* at 2501–02 (acknowledging implications in civil and other contexts) (Roberts, C.J., dissenting). And that is consistent with the Court's prior recognition that, "[w]hile § 1151 is concerned, on its face, only with criminal jurisdiction . . . it generally applies as well to questions of civil jurisdiction." *DeCoteau v. Dist. Cty. Ct. for Tenth Jud. Dist.*, 420 U.S. 425, 428 n.2 (1975); *see also Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 527 (1998) (same); *Indian Country, U.S.A., Inc. v. State of Okl. ex rel. Oklahoma Tax Comm'n*, 829 F.2d 967, 973 (10th Cir. 1987) (classification in § 1151 "applies to questions of both civil and criminal jurisdiction" and

is the "benchmark for approaching the allocation of federal, tribal, and state authority with respect to Indians and Indian lands").

Neither *McGirt* nor any other Supreme Court case supports Oklahoma's argument that the Reservation's status must be limited to the criminal law context. Federal court precedent and Indian law principles instead support the opposite conclusion. *See, e.g.*, *Hagen v. Utah*, 510 U.S. 399, 412 (1994) (not limiting diminishment of Uintah Indian Reservation to specific context); *Mattz v. Arnett*, 412 U.S. 481, 505 (1973) (not limiting recognition of Klamath River Reservation particular context). Courts of Appeals in other circuits have applied *McGirt*'s reasoning to the civil and regulatory context. *See Cayuga Nation v. Tanner*, 6 F.4th 361, 379–80 (2d Cir. 2021) (applying *McGirt* to hold that land constituted "Indian lands" under the Indian Gaming Regulatory Act (IGRA)); *Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 684–85 (7th Cir. 2020) (recognizing reservation under *McGirt*'s reasoning for event-permitting purposes).

Because the Muscogee Reservation remains intact, there can be no serious dispute as to the second part of the analysis—whether the Muscogee Reservation constitutes "Indian lands" as SMCRA defines them. Under SMCRA, "Indian lands" constitute "all lands . . . within the exterior boundaries of any Federal Indian reservation . . . ."[6] 30 U.S.C. § 1291(9). This definition is nearly identical to that of "Indian country" under the Major Crimes Act—"all land within the limits of any Indian reservation under the

---

[6] Because SMCRA plainly defines "Indian lands" in the context of territory, not individuals, Oklahoma's argument in favor of State regulation within the boundaries of the reservation based on *who* would be regulated, State's Brief at 15–16, lacks merit.

jurisdiction of the United States Government," 18 U.S.C. § 1151. If the Muscogee Reservation constitutes Indian country for purposes of the Major Crimes Act, it must also constitute Indian lands under SMCRA. *Cf. Cayuga Nation*, 6 F.4th at 361 (describing the Major Crimes Act's definition as "largely identical" to the IGRA's definition of "Indian lands" as "all lands within the limits of any Indian reservation").

Ultimately, because the Court has recognized the continued establishment of the Muscogee Reservation, "all lands" within the reservation's "exterior boundaries" are Indian lands under SMCRA. Oklahoma appears to concede as much. *See* State's Brief at 16–17 (arguing instead that it has authority to regulate on Indian lands.); *see also* Compl. Ex. 3 (acknowledging that the lands subject to the McGirt decision are "Indian lands," and "on the Creek Reservation").

### 2.    SMCRA and Federal regulations mandate that OSMRE regulate surface coal mining and reclamation operations on Indian lands

Because *McGirt* rendered the Muscogee Reservation "Indian lands," in the absence of a tribal program, SMCRA unambiguously assigns the Secretary exclusive authority to regulate surface coal mining operations and to conduct AML reclamation on those lands. It equally unambiguously precludes any State from exercising such authority on those lands. Even were there ambiguity, however, OSMRE's and Oklahoma's regulations, precedent, and the legislative history all support this structure of authority.

#### a)    SMCRA's plain text grants authority to OSMRE, and explicitly excludes State authority, on Indian lands

SMCRA designated the Secretary as the regulatory authority on Indian lands in the

absence of a tribal program and expressly precludes State regulation on Indian lands. Because "the statutory text is plain and unambiguous," SMCRA's structuring of authority must be applied "according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).

First, SMCRA establishes a regulatory structure that denies the States any authority on Indian lands.[7] As explained *supra*, SMCRA permits a State to establish "State program," which it expressly defines to exclude "Indian lands." 30 U.S.C. §§ 1253(a), 1291(25), 1291(11). SMCRA's requirements for state primacy and its operational requirements for state regulation under primacy also frame state authority in the context of "a State program" on "lands within [a] State," which are defined to exclude "Indian lands." *See* 30 U.S.C. §§ 1253, 1256(a). A State therefore "may not exercise authority over" an Indian reservation under Title V and SMCRA's implementing regulations. *New Mexico*, 820 F.2d at 445. These definitions directly rebut Oklahoma's contention that "Congress omits any reference to 'non-Indian lands' when identifying where States shall administer SMCRA regulatory programs." State's Brief at 27.

Rather than assigning any authority to the States over Indian lands, SMCRA renders OSMRE the regulatory authority in the absence of a tribal program. Title V expressly states that none of its provisions apply to "Indian lands" except as provided in § 1300. 30 U.S.C. § 1273(a); *see also Hodel*, 452 U.S. at 271 n.6 ("Section 710 of the

---

[7] Even the cases on which Oklahoma relies in its attempt to recast SMCRA's plain language, State's Brief at 15, acknowledge that federal law abrogates a State's authority to exercise jurisdiction over land within a reservation. *See Nevada v. Hicks*, 533 U.S. 353, 365 (2001) (State's "jurisdiction on reservations can of course be stripped by Congress"); *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 72, 75 (1962) (States lack jurisdiction when "forbidden by federal law").

Act, 30 U.S.C. § 1300 . . . regulates surface mining on 'Indian lands.'"); *Navajo Nation*, 556 U.S. at 300 ("One section of the Act, § 1300, deals with coal mining specifically on Indian lands[.]"). Section 1300, in turn, allows an Indian tribe to obtain approval of a tribal regulatory program for regulation under Title V. 30 U.S.C. § 1300(j). In the absence of such a tribal program, however, § 1300 entrusts the Secretary with incorporating SMCRA's requirements "in all existing and new leases issued for coal on Indian lands," 30 U.S.C. § 1300(c)-(d), and enforcing environmental standards and other lease terms and conditions on Indian lands, *id.* § 1300(e). To comply with these provisions, the Secretary must necessarily have the authority to enforce them.[8] *Id.* § 1300(d) (specifically incorporating SMCRA's enforcement and inspection requirements); *see also In re Surface Mining Regul. Litig.*, 627 F.2d 1346, 1365 (D.C. Cir. 1980) (recognizing that authority). Nothing in § 1300 authorizes a State to regulate surface coal mining and reclamation operations on Indian lands.

Title IV of SMCRA likewise allows a State to operate a State Reclamation Plan on only non-Indian lands. *See, e.g.*, 30 U.S.C. §§ 1235(b), (k). Absent a tribal reclamation program, SMCRA expressly authorizes OSMRE to operate a Federal Reclamation Program "[f]or the purpose of meeting the objectives of the fund . . . *on Indian lands* where the . . . Indian tribe does not have an approved" Title IV program. 30 U.S.C.

---

[8] Oklahoma argues that OSMRE has no authority beyond the specific tasks assigned to it. State's Brief at 24–25. But that ignores SMCRA's broad general authority provision which authorizes OSMRE to, among other regulatory and enforcement actions, "administer the programs for controlling surface coal mining operations which are required by" SMCRA. 30 U.S.C. § 1211(c)(1).

§ 1232(g)(3)(C) (emphasis added). SMCRA therefore "explicitly denies [a State] the power to administer federal funds to reclaim abandoned mines" under Title IV on Indian lands. *Montana*, 749 F.2d at 747–48. Oklahoma cannot overcome SMCRA's plain language prohibiting it from exercising—and requiring OSMRE to exercise—jurisdiction within the Muscogee Reservation in the absence of a tribal program.

> **b)      Federal regulations designate OSMRE, not the States, as the regulatory authority on Indian lands**

"[T]he best evidence of Congress's intent is the statutory text," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012), which, as explained above, precludes Oklahoma from exercising authority on Indian lands. Should the Court deem the statute ambiguous, however, it should "defer to the agency's interpretation" because that interpretation "is reasonable in light of the text, the structure, and the underlying purpose." *Midwest Crane & Rigging, Inc. v. Fed. Motor Carrier Safety Admin.*, 603 F.3d 837, 840 (10th Cir. 2010). Since just after SMCRA's enactment, Interior has taken the position that "State programs will not include regulation of mining on Indian lands." 43 Fed. Reg. 41,662, 41,647 (Sept. 18, 1978); *see also id.* at 41,810.

SMCRA's implementing regulations reflect this position. They designate OSMRE as the "regulatory authority on Indian lands," 30 C.F.R. § 750.6(a)(1), and assign to the Secretary "the responsibility for the administration of the Federal program for Indian lands," *id.* § 701.4(h). This program is distinct from regulation of State programs, which are implemented by State regulatory authorities, *see id.* § 701.4(a), or Federal programs in States without approved State programs, *see id.* § 701.4(c). OSMRE has exclusively

administered the "Federal program for Indian lands" for over 35 years, *id.* § 750.1; 49 Fed. Reg. 38,462 (Sept. 28, 1984), including on reservations located within states— such as Colorado, Montana, New Mexico, and Utah—with established State programs, Yellowman Decl. ¶¶ 4–8. The regulations also authorize OSMRE to conduct reclamation operations within Indian lands with no approved tribal program. 30 C.F.R. § 886.27. Oklahoma has not challenged these longstanding regulations on any legal grounds. *See* State's Brief at 25 (merely describing the regulations as "self-serving").

OSMRE's approval of Oklahoma's State program further reflects this interpretation and explicitly precludes Oklahoma from regulating on Indian lands. *See* 46 Fed. Reg. 4902, 4909 (Jan. 19, 1981) ("[A]ll surface coal mining and reclamation operations on non-Federal and *non-Indian lands* . . . in Oklahoma shall be subject to the permanent regulatory program.") (emphasis added). OSMRE has consistently reiterated this position over the last 40 years. *E.g.*, 47 Fed. Reg. at 14,153 (Oklahoma law provided for entry, inspection, and monitoring of mining operations "on non-Indian" lands); 70 Fed. Reg. 60,481, 60,483 (Oct. 18, 2005) ("Oklahoma program does not regulate . . . surface coal mining and reclamation operations on Indian lands."); 77 Fed. Reg. 25,872, 25,874 (May 2, 2012) (same). The same goes for OCC's AML reclamation plan. 70 Fed. Reg. at 16,944 (Oklahoma's reclamation plan "does not provide for reclamation and restoration of land and water resources adversely affected by past coal mining on Indian lands.").

In fact, even Oklahoma's own regulations reflect that the State is prohibited from exercising jurisdiction under SMCRA within the Muscogee Reservation. They define

"State program" as "a program established by a State and approved by the Secretary . . .

to regulate surface coal mining and reclamation operations on *non-Indian* and non-

Federal lands within that State," Okla. Admin. Code § 460:20-3-5 (emphasis added), and

limit the State's permitting authority to "non-Indian lands," *id.* § 460:20-15-3 (requiring a

valid permit from ODM before conducting surface coal mining and reclamation

operations "on non-Federal or non-Indian lands within the State")*; see also id.* § 460:20-

3-6 (regulations apply to "operations on non-Indian or non-federal lands").

**c)      Congress intended OSMRE, not the States, to regulate on Indian lands in the absence of a tribal program**

When the statute's text is clear—as it is here—the Court need not consider

legislative history. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997). But even the

portions of that history cited by Oklahoma support OSMRE's regulation on Indian lands.

As Oklahoma points out, State's Brief at 23, Congress authorized a study of and proposed

legislation for tribal regulation of surface mining of coal on Indian lands. 30 U.S.C.

§ 1300(a), (b). Until that was possible, Congress intended the Secretary, not the States, to

enforce SMCRA on Indian lands. *See* H.R. Rep. No. 95-218 at 134–35 (1977) (requiring

the Secretary to enforce and incorporate SMCRA's provisions and standards on Indian

lands). It also "expect[ed] the Secretary of the Interior to protect the surface values of all

Indian lands from the potential ravages of surface mining through his authority to

approve all mineral leases and permits" and to "include terms and conditions in such

leases which will meet the criteria set out in" SMCRA. S. Rep. No. 402 at 74 (1973).

Congress was equally clear in denying the States any authority over surface coal

23

mining regulation on Indian lands. *See* S. Rep. No. 95-218 at 57 (1977) (states did not regulate surface coal mining operations on Indian lands when Congress was considering SMCRA); *id.*at 99 ("'Land within any State' is so defined and used throughout the Act so as to insure that the States, through their State programs, will not assert any additional authority over . . . Indian lands"). And Courts have consistently divined from this history Congress's intent that the Secretary, and not the States, regulate on Indian lands absent a tribal program. *See In re Surface Min. Regul. Litig.*, 627 F.2d at 1364–65 (rejecting argument that the Secretary lacked authority to enforce interim program standards on Indian lands); *Montana*, 749 F.2d at 749 (rejecting Montana's argument that Congress intended States to conduct reclamation on "Indian lands").

### B.   "Fundamental principles of equity" do not alter this result

Rather than acknowledge the plain consequences of the Supreme Court's recognition of the Muscogee Reservation in *McGirt* on SMCRA, Oklahoma contends that "fundamental principles of equity" and practical considerations should preclude SMCRA's operation. *See* State's Brief at 15–21. It is wrong as a matter of law.

First, Oklahoma's reliance on *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266 (2d Cir. 2005), and *Oneida Indian Nation of New York v. County of Oneida*, 617 F.3d 114 (2d Cir. 2010), is misplaced. All three cases involved Indian tribes' assertion of possessory and sovereign rights over parcels of land reacquired after a long lapse. Taken together, they hold that "equitable defenses apply to 'disruptive' Indian land claims, and that possessory claims . . . are by their nature disruptive, in that they call into question

settled land titles." *Oneida*, 617 F.3d at 117. This case, by contrast, does not involve an Indian land claim or assertion of tribal sovereignty over "ancient tribal lands," but instead a federal agency's exercise of jurisdiction expressly granted by statute within a current reservation guaranteed by treaty. *See McGirt*, 140 S. Ct. at 2464. The "fundamental principles of equity" relied on in those cases thus do not preclude OSMRE's compliance with SMCRA.

Instead, an equally "foundational principle" applies more directly: "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 900–01 (10th Cir. 2017) (quoting *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327–28 (2015)); *see also Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1144 (10th Cir. 2012) ("It is a longstanding maxim that equity follows the law." (citation omitted)). Because "an Article III court sitting in equity remains bound to a federal statute's text," the Court cannot ignore SMCRA's jurisdictional mandate regardless of any equitable and practical concerns asserted by the State. *Safe Streets*, 859 F.3d at 901.

*McGirt* itself teaches the same. Oklahoma made many of the same equitable and practical arguments there, contending that its longstanding exercise of criminal jurisdiction over lands within the Muscogee Reservation and the disruptive consequences of acknowledging its establishment should sway the Court. But the Supreme Court rejected those arguments, determining that they did not permit the Court "to ignore" what it viewed as "a statutory promise." *McGirt*, 140 S. Ct. at 2480; *id.* at 2474 ("[T]he 'practical advantages' of ignoring the written law" are not relevant "in any other area of

statutory interpretation, and there is no reason why they should be permitted here."). The same is true here. "[T]he magnitude of a legal wrong"—here, Oklahoma's exercise of SMCRA regulatory authority within the Muscogee Reservation—"is no reason to perpetuate it." *Id.* at 2480.

The State nevertheless contends that *McGirt* supports its equitable argument. The Supreme Court did acknowledge that, in certain contexts, "other legal doctrines" such as "procedural bars, res judicata, statutes of repose, and laches" may protect those who "have reasonably labored under a mistaken understanding of the law." *Id.* at 2481. But this is not one of those cases because none of those doctrines allow a Court to set aside Congress's express instructions.[9] *See, e.g.*, *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) ("[A] court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation'" and cannot choose not to enforce a federal statute. (citation omitted)); *Miller v. French*, 530 U.S. 327, 341 (2000) (court may not enjoin automatic stay that "would be plainly contrary to Congress' intent in enacting" the statute); *Ute Indian Tribe of Uintah v. Myton*, 835 F.3d 1255, 1263 (10th Cir. 2016) ("[I]t is not for [courts] to override Congress's commands on the basis of claims of equity from either side." (citation omitted)).

---

[9] Nor has the State even attempted to explain how any of those doctrines might apply to this case, which is far outside of the Indian land claim context at issue in *Sherrill*, *Cayuga*, and *Oneida*. In fact, the Second Circuit in *Cayuga* recognized that "the United States has traditionally not been subject to the defense of laches." *Cayuga*, 413 F.3d at 278; *United States v. Distefano*, 279 F.3d 1241, 1245 n.2 (10th Cir. 2002) ("laches may not be asserted against the United States in an action brought to enforce a public right or a public interest").

C.      **Oklahoma cannot succeed on its claims that OSMRE violated the APA**

Oklahoma is also not likely to succeed on its claims under the APA because the actions Oklahoma challenges are not "final agency actions" made reviewable by that statute. Even if the Court could review those actions, OSMRE's actions are not arbitrary and capricious or contrary to law because they comply with *McGirt* and SMCRA. Finally, even assuming *arguendo* that OSMRE's actions constituted rulemaking, SMCRA deprives this Court of subject-matter jurisdiction over any such claim.

1.      **OSMRE's challenged actions are not "agency actions" reviewable under the APA**

"The APA contains a limited waiver of sovereign immunity, allowing for judicial review of . . . [a] 'final agency action for which there is no other adequate remedy in a court.'" *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1028 (10th Cir. 2017) (quoting 5 U.S.C. § 704). However, not every "agency action" is subject to review under the APA. *Indep. Equip. Dealers Ass'n v. U.S. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004). "[A]n agency's execution of a nondiscretionary . . . action in compliance with an express statutory mandate is not agency action under the APA." *Senior Execs. Ass'n v. United States*, No. 8:12-CV-02297-AW, 2013 WL 1316333, at *17 (D. Md. Mar. 27, 2013); *see also Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1302 (11th Cir. 2010) (holding procedural statutes "do not apply when an agency has no discretion to act or not to act on a given matter"). Likewise, an agency's compliance with a judicial mandate is not reviewable agency action. *See Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002) (an action that takes place "in the context of a civil judicial proceeding" is not reviewable under the APA).

27

Here, Oklahoma claims to challenge OSMRE's jurisdiction over Indian lands and alleged denials of its grant funding under the APA.[10] But the actions Oklahoma actually challenges are the Supreme Court's holding that the Muscogee Reservation remains intact and Congress's designation of such lands as "Indian lands" in SMCRA. Because *McGirt* and SMCRA mandate OSMRE's jurisdiction, and leave no room for agency discretion, OSMRE's jurisdiction is not reviewable under the APA. *See Senior Executives*, 2013 WL 1316333, at *18 ("Congress's passage of the Act . . . is the proximate cause of the legal consequences of which Plaintiffs complain.").[11]

Oklahoma's grant-funding claims fare no better. Federal law mandates that OSMRE disapprove Oklahoma's applications for funding for activities on Indian lands because those lands are not included in Oklahoma's approved State program. *See, e.g.*, 31 U.S.C. § 1301(a) (prohibiting use of appropriations for purposes other than those for which they were appropriated); 30 C.F.R. § 735.14(b) (allowing State to use grant money to cover the cost of a "State regulatory program," which does not include Indian lands); *id.* § 886.12(a) (requiring AML grant funding to be used to "carry out the specific reclamation and other activities authorized in SMCRA"). As OSMRE has no discretion to provide additional funding, its grant-related actions are not reviewable under the APA.

---

[10] These claims are crucial to Oklahoma's case because the United States has not waived sovereign immunity for claims under the Declaratory Judgment Act. *See Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822 (10th Cir. 1981).

[11] It makes no difference that OSMRE published a notice in the *Federal Register*. Publication does not constitute "agency action" within the meaning of the APA where it does not reflect any decision by the agency. *Ill. Citizens Comm. for Broad. v. Fed. Commc'ns Comm'n*, 515 F.2d 397, 402 (D.C. Cir. 1974).

And because OSMRE has not denied any grant application or amendment from either ODM or OCC, *see* Fritsch Decl. ¶¶ 16–17, 40–41, 53, its decisions on those grants, even if "agency actions," do not constitute "*final* agency action" subject to review. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1104 (9th Cir. 2007).

### 2. OSMRE's actions are in accordance with law—*McGirt* and SMCRA—and therefore not arbitrary or capricious

Even if the Court finds that OSMRE acting as the regulatory authority or its actions in connection with Oklahoma's grants are reviewable, those actions complied with the APA. As thoroughly explained *supra*, OSMRE's actions were mandated by the clear holding of *McGirt* and the plain text of SMCRA and were therefore necessarily "in accordance with law." 5 U.S.C. § 706(2)(A). Moreover, even if OSMRE needed to provide an explanation for an action it was legally required to take, it plainly did "articulate[] a rational connection between the facts found and the choice made." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983). OSMRE explained in its correspondence with Oklahoma and its *Federal Register* notice that *McGirt* and SMCRA required OSMRE to be the SMCRA regulatory and AML reclamation authority on Indian lands in Oklahoma.[12] Compl. Ex 1; Compl. Ex. 2; Ex. 1; Ex. 2; 86 Fed. Reg. 26,941. OSMRE had no obligation to consider the reliance interests and practical implications that Oklahoma raises, *see* State's Brief at 32–33, because—as discussed *supra*—they cannot change SMCRA's legal mandate.

---

[12] Oklahoma offers no authority for the proposition that the agency's rationale need be fully articulated in a notice in the *Federal Register*. OSMRE addressed Oklahoma's legal arguments, *see* State Brief at 32, on at least June 2, 2021, Ex. 3.

Oklahoma also cannot prevail on its arguments concerning OSMRE's grant-related actions. The State claims that OSMRE "denied" both its OCC and ODM grant applications. But OSMRE approved ODM's application for calendar year 2021 at the level requested by ODM. Fritsch Decl. ¶¶ 19–20. ODM must submit an amendment to reflect the change in SMCRA jurisdiction mandated by *McGirt*, however, before further funds may be disbursed. *See id*. ¶¶ 25–30; Ex. 4. That change is mandated by law. And although OSMRE did disapprove OCC's grant application, it notified OCC in writing of its reasons. *See* 30 C.F.R. § 886.15(c). As OSMRE explained, OCC's grant application was unlikely to be approved because OCC lacked jurisdiction to conduct reclamation on Indian lands. Compl. Ex. 2; Ex. 2; Ex. 5; Fritsch Decl. ¶¶ 45–52. Oklahoma's disagreement with *McGirt* does not render OSMRE's actions mandating compliance with the law or reasonable explanations arbitrary and capricious.

### 3.    The Court lacks jurisdiction to review the alleged "rulemaking"

Oklahoma also argues that OSMRE violated the APA's rulemaking procedures by not providing notice and an opportunity for comment. For at least the reasons discussed above, OSMRE's explanation of its SMCRA jurisdiction within the Muscogee Reservation by operation of law does not constitute a "rule" under the APA. But even were it a rule, as Oklahoma argues, this Court lacks jurisdiction to review it.

First, SMCRA imposes a 60-day statute of limitations on any action challenging a SMCRA-related rulemaking. 30 U.S.C. § 1276(a). Oklahoma filed its complaint more than 60 days after OSMRE notified it, on April 2, 2021, that "the State of Oklahoma may no longer administer a SMCRA regulatory program on lands within the exterior

30

boundaries of the Muscogee (Creek) Nation reservation." Compl. Ex. 1 at 3; Compl. Ex. 2 at 3. The notice later published in the *Federal Register* merely reiterated this conclusion. Thus, if OSMRE's actions constitute a "rule," Oklahoma's claims must be dismissed as untimely.

Second, under SMCRA, rulemakings that are not approvals or disapprovals of a State program may be subject to judicial review "only by the United States District Court for the District in which the surface coal mining operation is located"—here, the Eastern District of Oklahoma.[13] 30 U.S.C. § 1276(a)(1); *Save Our Cumberland Mountains, Inc. v. Lujan*, 963 F.2d 1541, 1550 (D.C. Cir. 1992) (Section 1276(a)(1) is "directive, not permissive," so it "sets subject matter jurisdiction"). OSMRE exercising its SMCRA jurisdiction within the Muscogee Reservation does not amend Oklahoma's program— which, as explained *supra*, has *always* excluded Indian lands. And OSMRE has not disapproved that program—it remains approved and unaltered.[14] Therefore, if OSMRE's

---

[13] Surface coal mining operations and AML reclamation sites within the Muscogee Reservation are located in the Eastern District of Oklahoma. *See* Maki Decl. ¶¶ 5-6 & Ex. A. In fact, *all* surface coal mining operations and AML reclamation activities in Oklahoma are located outside of the Western District. *See id*.

[14] For this reason, SMCRA's procedures for amending, approving, or disapproving a State program also do not apply, State Brief at 30, and *Ohio River Valley Env't Coal., Inc. v. Kempthorne*, 473 F.3d 94 (4th Cir. 2006), State Brief at 34, is inapposite. Nor has OSMRE promulgated a "Federal program" pursuant to 30 U.S.C. § 1254(a) or 30 C.F.R. § 733.13. Those provisions apply when a state is not effectively administering an already-approved State program. 30 C.F.R. § 733.13(b). OSMRE has invoked those procedures in the past, implementing a Federal program, in Oklahoma upon findings that ODM failed to conduct necessary enforcement measures. *See* 49 Fed. Reg. 14,674-01 (Apr. 12, 1984). But they do not apply here, where jurisdiction transfers by operation of law.

actions are rulemakings, this Court lacks jurisdiction to review them.[15]

## II.     The public interest, tribal interests, and the interests of the federal government all weigh heavily against an injunction

The injunction that Oklahoma seeks would harm the federal government's and tribal interests as well as the public interest. When a party seeks to enjoin the government, the balance of harms and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Conducting this analysis, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Here, the public interest favors compliance with federal law and Supreme Court decisions; respect for federal and tribal sovereignty interests; and a smooth transfer of SMCRA jurisdiction to OSMRE.

### 1.     The public interest favors complying with the law

As an initial matter, to the extent Oklahoma's interests are harmed here, those harms arise from the Supreme Court's holding in *McGirt*, not from the application of *McGirt* to SMCRA. Unless the Court or Congress revisits that decision, *McGirt* is the law of the land. Deviation from binding Supreme Court precedent threatens the rule of law and is contrary to the public interest. *See Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) (per curiam) ("the public interest is better served by following

---

[15] Even if the Court had jurisdiction over Oklahoma's rulemaking claims, notice and comment procedures would not apply because nondiscretionary acts are not subject to the APA's notice-and-comment requirements. *See Metzenbaum v. Fed. Energy Regul. Comm'n*, 675 F.2d 1282, 1291 (D.C. Cir. 1982) (per curiam). Where, as here, an agency has no discretion, "providing notice and an opportunity for comment . . . would have served no purpose," and agencies are not required "to do a futile thing." *Lake Carriers' Ass'n v. U.S. E.P.A.*, 652 F.3d 1, 10 (D.C. Cir. 2011).

binding Supreme Court precedent"); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) ("[I]t is obvious that compliance with the law is in the public interest.").

Furthermore, as explained *supra*, Congress made a policy choice in SMCRA about the appropriate regulator for surface coal mining and AML reclamation operations on Indian lands. That policy choice reflects the public interest, and the Court should not override it with an injunction. *See Oakland Cannabis*, 532 U.S. at 497; *see also Fish v. Kobach*, 840 F.3d 710, 755–56 (10th Cir. 2016) (Congress's judgment in statute reflects the public interest for purposes of preliminary injunction analysis); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003) ("The courts' peculiar function is to say what the law is, not to second-guess democratic determinations of the public interest.").

### 2.     The United States', the public's, and the Muscogee (Creek) Nation's interests disfavor an injunction

In focusing narrowly on its own sovereignty interests, Oklahoma ignores that this case implicates the interests of two other sovereigns—the United States and the Muscogee (Creek) Nation. The federal government has a sovereignty interest in exercising Congressionally delegated regulatory authority without State interference. The Nation also has an interest in accessing and exercising its own rights under SMCRA. *See* 30 U.S.C. §§ 1235(k), 1300(j)(1). An injunction permitting Oklahoma to exercise jurisdiction within the Muscogee Reservation would effectively prevent the Nation from exercising its own statutory right to seek primacy under SMCRA. And that "impermissibl[e] intru[sion] on [tribal] sovereignty by enforcing state law on Indian land

. . . can constitute irreparable injury." *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006); *see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1252 (10th Cir. 2001) ("the threatened injury to tribal sovereignty outweighed the potential harm to state sovereignty").

The federal government, the Nation, and the public all have a strong interest in the smooth transfer of SMCRA regulatory authority to OSMRE, and in OSMRE's ability to exercise that authority unimpeded. Contrary to Oklahoma's claims, OSMRE both can exercise and has already begun exercising regulatory authority in the Muscogee Reservation. OSMRE has been working toward exercising its jurisdiction over both surface coal mining and reclamation operations and AML reclamation on Indian lands in Oklahoma since at least November 2020, including accounting for OSMRE's increased funding needs in the agency's FY 2022 budget request. Clayborne Decl. ¶¶ 17–23. Even before notifying ODM and OCC of the required transfer of regulatory and AML authority for the Muscogee (Creek) Reservation in April 2021, OSMRE began assessing its resources and developing a plan of operations. *Id.* ¶¶ 17–23, 38–55; Maki Decl. ¶¶ 7–11 By July 2021, OSMRE had developed a short-term plan for immediate assumption of operations within the Muscogee, Cherokee, and Choctaw Reservations using existing resources and a long-term plan, which requires hiring or transferring additional personnel. Maki Decl. ¶¶ 23–27; Clayborne Decl. ¶¶ 20–23, 38–55 (explaining in detail OSMRE's plan for implementing its jurisdiction). Since April, OSMRE has conducted inspections on sites within the Reservations and has issued an imminent harm cessation order for serious SMCRA violations at one site. Maki Decl. ¶¶ 31–32. OSMRE, which

34

operates the Federal Reclamation Program for AML, has both the experience and the ability to take over reclamation activities on those lands. Norman-Moore Decl. ¶¶ 3–11; Clayborne Decl. ¶¶ 53–55.

Oklahoma's argument that the public interest requires it to continue to regulate within the Muscogee Reservation is based solely on Oklahoma's own assumption about OSMRE's preparedness. *See* State's Brief at 20. In reality, OSMRE has been working diligently to exercise its jurisdiction. For example, in April, OSMRE requested ODM's and OCC's cooperation and coordination in transferring all SMCRA regulatory authority within the Muscogee Reservation to OSMRE within 30 days, including transfer of records. Compl. Ex. 1; Compl. Ex. 2. But the Oklahoma Attorney General has advised those agencies not to cooperate with OSMRE. *See* Compl. Ex. 3 at 4; Ex. 11; Maki Decl. ¶¶ 13, 16, 44; Clayborne Decl. ¶¶ 28, 30. Although OSMRE was able to obtain copies of OCC's and ODM's records for sites within the Muscogee Reservation, both ODM and OCC have refused to turn over records for mines on the Cherokee and Choctaw Reservations.[16] Clayborne Decl. ¶¶ 34–35; Maki Decl. ¶¶ 14–18, 22. While these records are central to a smooth transfer of regulatory authority, OSMRE, nonetheless is fully capable of fulfilling its statutorily-mandated role to regulate surface coal mining and reclamation operations on Indian lands. *See* Clayborne Decl. ¶ 38–55.

Oklahoma's other assertions that purport to opine on OSMRE's readiness to

---

[16] Even were Oklahoma the regulatory authority within Indian lands, refusal to provide these records would be a violation of Oklahoma's State program and the Federal grant regulations. *See, e.g.*, 2 C.F.R. §§ 200.334–200.338 and 30 C.F.R. § 840.14(a).

regulate also do not support injunctive relief because they are speculative. For example, Oklahoma's accusation that OSMRE has failed to take action on bonds ready for release, State's Brief at 12, ignores that ODM, not OSMRE, is still the sole payee on those bonds for non-Federal lands. Maki Decl. ¶ 41. Oklahoma's suggestion that OSMRE will not be able to perform reclamation work, *id.* at 13, ignores that OSMRE already operates the FRP in many States and is able to perform all necessary duties, including hiring contractors, Norman-Moore Decl. ¶ 11. In short, OSMRE is ready and has already started performing its regulatory and AML reclamation duties on Indian lands in Oklahoma.

OSMRE also faces economic losses, and the public faces environmental harms, if the Court issues an injunction. If the State continues to regulate surface coal mining, it may release or forfeit bonds before reclamation is complete and thereby prevent OSMRE from ensuring adequate reclamation if the federal government succeeds on the merits.[17] Maki Decl. ¶¶ 32–40. OSMRE lacks a reliable method of recovering bond money released by or forfeited to the State. *Id.* ¶¶ 35, 41–43. Likewise, if the Court issues a mandatory injunction requiring OSMRE to provide grant funding, the agency will need to

---

[17] Under SMCRA, operators are required to post performance bonds to ensure reclamation of mines. 30 U.S.C. § 1259; 30 C.F.R. § 800.11. "Release of this bond indicates that the regulatory authority is satisfied that reclamation is complete and the site is no longer likely to produce contaminated runoff." *Am. Min. Cong. v. U.S. E.P.A.*, 965 F.2d 759, 768 (9th Cir. 1992); *see also* 30 C.F.R. § 800.40. Because Oklahoma has been the primary regulator until recently, the State is the sole payee on performance bonds on non-Federal lands. Maki Decl. ¶ 41. The State has approved multiple bond releases already and forfeited another. *Id.* ¶¶ 33, 36–39. If the State releases or forfeits other bonds before they are made payable to OSMRE as part of the process of transitioning regulatory authority, OSMRE has limited means to recover that money and ensure reclamation meets Federal Indian lands standards. *Id.* ¶¶ 34–35, 40–43.

recoup that money should the Court ultimately find its favor. Fritsch Decl. ¶ 58.

## III.  Oklahoma has not demonstrated that it would be irreparably harmed

Because OSMRE is able to regulate, and already regulating, within the Muscogee Reservation, the harms to the environment that Oklahoma raises are not likely to occur. When weighed against the significant harms of an injunction to the federal government, the Muscogee (Creek) Nation, and the public interest, the remaining harms alleged by Oklahoma—economic harm, sovereignty harms, and the broader ramifications of *McGirt*—do not warrant the extraordinary relief of a preliminary injunction.

First, Oklahoma's alleged economic harms are not "unrecoverable." State's Brief at 37. As the State acknowledges, harm is not irreparable unless the plaintiff can "demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact[.]" *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017). If this Court determines as a matter of law at a later stage of the case that Oklahoma may exercise jurisdiction over surface mining within the Muscogee Reservation, the State may seek additional federal grant funding. *See* Fritsch Decl. ¶ 53.

Moreover, at least some of the State's economic harms are self-inflicted. For the reasons explained *supra*, Oklahoma may no longer receive federal grants to fund enforcement and reclamation within the Muscogee Reservation. But the State still has funds remaining from the prior year's AML grant. Maki Decl. ¶ 28; Fritsch Decl. ¶ 36, 54. And as also explained *supra*, ODM and OCC may submit grant amendment requests, but neither has done so—and both have been instructed not to. *See* Ex. 11. Therefore, the

State's allegations of economic harm fail to account for the fact that OSMRE has offered to work with the State to provide additional funds that the State could use to cover interim expenses, so long as those funds are justified. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (self-inflicted harm "severely undermines" claims for equitable relief (citation omitted)); *Colorado v. U.S. E.P.A.*, 989 F.3d 874, 888 (10th Cir. 2021) (state's alleged harm was self-inflicted).

Equally important, the State's unstated presumption that an injunction will restore grant funding, *see* State's Brief at 37, means that it seeks a mandatory preliminary injunction to compel OSMRE to provide federal funding. Grant funding for a State program is not guaranteed in a particular amount simply because a State has an approved regulatory program. *See* 30 U.S.C. § 1295; 30 C.F.R. § 735.15. Oklahoma's failure to acknowledge the mandatory nature of the injunction it seeks, let alone justify the Court's interference in OSMRE's grant funding decisions, does not meet the heightened standard of review for a mandatory injunction. *RoDa Drilling*, 552 F.3d at 1208–09 & n.3.

Second, the State's alleged sovereignty harms fail to acknowledge that the State's SMCRA program is an exercise of federally-delegated authority. The State has never had plenary power over surface coal mining within its borders under SMCRA. Its State program operates under federal oversight, must meet minimum federal requirements, and receives significant federal funding. *See Bragg v. W.V. Coal Ass'n*, 248 F.3d 275, 288–89 (4th Cir. 2001); State's Brief at 37 (explaining dependence on federal grant funding). Thus, this is not a case like *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001), *see* State's Brief at 37, where the State's ability to exercise its inherent sovereign police or

38

tax powers, for example, are at issue.[18] The suggestion that state interests in exercising authority under a federal statute within an Indian reservation trump the federal, tribal, and public interest in the proper administration of federal law turns federal supremacy on its head. *Cf. Hodel*, 452 U.S. at 290 (Although SMCRA "obviously curtail[s] or prohibit[s] the States' prerogatives to make legislative choices respecting subjects the States may consider important, the Supremacy Clause permits no other result.").

Third and finally, Oklahoma seeks to tie this case into the broader ramifications of the *McGirt* decision in arenas far outside of surface coal mining. State's Brief at 38–39. Other cases and other laws and regulations are irrelevant to the narrow question before this Court—whether the Muscogee Reservation constitutes "Indian lands" under SMCRA such that OSMRE alone has jurisdiction over surface coal mining within its borders. *McGirt* resolves this question and, notwithstanding Oklahoma's strenuous disagreement with that decision, the parties and the Court must follow it here.

## IV.   Oklahoma should be required to post a bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

---

[18] In the other two cases cited by the State in support of its sovereignty argument, the courts held that state sovereignty concerns were insufficient to justify or prevent an injunction. *See Winnebago Tribe of Neb. v. Stovall*, 216 F. Supp. 2d 1226, 1233 (D. Kan. 2002) (enjoining State in part because tribal sovereignty harms outweighed harms to state sovereignty), *aff'd*, 341 F.3d 1202 (10th Cir. 2003); *N.M. Dep't of Game & Fish*, 854 F.3d at 1255 (vacating injunction against federal government in part because state failed to show sufficient evidence of irreparable harm to sovereignty interests).

restrained." Fed. R. Civ. P. 65(c). "[A] trial court has 'wide discretion' under Rule 65(c) in determining whether to require security." *Winnebago Tribe*, 341 F.3d at 1206. "[W]hen a trial court fails to contemplate the imposition of the bond, its order granting a preliminary injunction is unsupportable." *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987).

If the Court enjoins Federal Defendants, a bond is necessary to ensure that OSMRE has access to adequate reclamation funds in the event that Oklahoma releases or forfeits bonds before reclamation is complete. If the Court issues a mandatory injunction and requires OSMRE to provide grant funding to Oklahoma pending resolution of this case, a bond is necessary to ensure OSMRE can recover that funding—though OSMRE cannot predict this amount until the Court rules. At this time, OSMRE has calculated the total necessary funds as $7,817,827 based on key bonds at risk of release or forfeiture and requests that the Court require a bond in that amount. Maki Decl. ¶¶ 41–43; c*f. Md. Dep't of Hum. Res. v. U.S. Dep't of Agric.*, 976 F.2d 1462, 1483 (4th Cir. 1992) (holding district court erred in not requiring state to post bond where "the injunction exposed USDA and the federal food stamp program to substantial financial losses"); *State of Alabama ex rel. Siegelman v. U.S. E.P.A.*, 925 F.2d 385, 392 (11th Cir. 1991) (holding district court erred "when it discharged Alabama from any liability on the posted security" after injunction was dissolved).

## CONCLUSION

Oklahoma has not demonstrated its entitlement to a preliminary injunction—let alone a mandatory injunction. The Court should therefore deny Oklahoma's motion.

DATE: September 15, 2021                Respectfully submitted,

                                        JEAN E. WILLIAMS
                                        Deputy Assistant Attorney General
                                        United States Department of Justice
                                        Environment and Natural Resources Div.

                                         /s/ Arwyn Carroll
                                        ARWYN CARROLL
                                        Trial Attorney, Natural Resources Section
                                        Massachusetts Bar No. 675926
                                        P.O. Box 7611
                                        Washington, D.C. 20044-7611
                                        Phone: 202-305-0465
                                        Fax: 202-305-0506
                                        arwyn.carroll@usdoj.gov

                                        CLARE BORONOW
                                        Trial Attorney, Natural Resources Section
                                        Admitted to Maryland Bar
                                        999 18th St.
                                        South Terrace, Suite 370
                                        Denver, CO 80202
                                        Phone: 303-844-1362
                                        Fax: 303-844-1350
                                        clare.boronow@usdoj.gov

                                        *Counsel for Federal Defendants*