# **Exhibit 4**
Declaration of Joseph Maki and Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. CIV-21-0719-F |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## DECLARATION OF JOSEPH MAKI

I, Joseph Maki, hereby declare as follows:

1. I am over 18 years of age, competent to testify in this case, and have personal knowledge of the matters discussed in this declaration.

2. I have over 25 years of mining experience. I began my career as a Mining Hydrologist with the Minnesota Department of Natural Resources, working on a wide range of water-related issues on large open pit iron mines. After 8 years in that position, I returned to my home state of Michigan to work for the Michigan Department of Environmental Quality as the State Mining Program Manager. While Michigan does not have an active coal mining program, I oversaw Michigan's mining program for other minerals, enforcing regulations addressing transportation, storage, treatment, and disposal of ore, waste rock, and plans for mining and reclamation. Most recently before joining

1

the Office of Surface Mining Reclamation and Enforcement (OSMRE), I was a Senior

Environmental Engineer at a large open pit gold mine in Nevada.

   3.   I am currently the Director of the Tulsa Field Office (TFO) for OSMRE. I have

worked in this capacity since June 2020. In my capacity as Director of TFO, I oversee the

activities of six talented staff with a total of over 100 years of experience. My staff

engage in all aspects of regulating surface mining and reclamation and AML operations,

including but not limited to: regulatory oversight, processing permit revisions, bond

release inspections and approvals, and performing all duties that a regulatory authority

would. I am also a Tribal Liaison Officer for OSMRE; in this capacity, I carry out duties

related to OSMRE's tribal consultation responsibilities. As the senior OSMRE executive

in the States of Arkansas, Kansas, Oklahoma and Texas, I conduct oversight for

compliance with the Surface Mining Control and Reclamation Act of 1977 (SMCRA)

within these States. These duties include the following:

      a.   Communicate OSMRE's policies and procedures, implementing programs

    and reconciling deficiencies between OSMRE, the States, and other parties;

      b.   Meet with high-ranking executives of industry, States, local and federal

    agencies (Environmental Protection Agency, U.S Army Corps of Engineers, Fish

    and Wildlife Service), environmental groups, and the public on a variety of

    complex and sensitive issues;

      c.   Coordinate, correlate, and reconcile various functional programs with

    competing demands posed by environmental groups, State agencies, and coal

    operators;

   d.  Monitor and direct field office operations with a staff of six employees;

   e.  Ensure inspection reports are accurate, complete, and in accordance with
regulatory requirements and procedures.

   f.  Enforce State and Federal coal mining laws;

   g.  Address program issues of an extraordinarily complex and technical nature,
with many variables and conflicting factors that require continual policy
determinations and program adjustments as well as balancing competing demands;

   h.  Monitor and assess financial aid and assistance to assigned States;

   i.  Evaluate and audit State regulatory and Abandoned Mine Land (AML)
programs for compliance with the requirements of SMCRA and corresponding
State statutes;

   j.  Work closely with the Department of the Interior's (Department) Office of
the Solicitor on complex legal issues and cases and identifying and making
recommendations for resolving legal issues;

   k.  Review and authorize forwarding penalty recommendations for assessment;

   l.  Provide recommendations to the Regional Director on needed formulation
or changes of policies, legislative needs, regulations, and guidelines.

   4.  When I became Director in June 2020, OSMRE had a good working relationship
with the Oklahoma Department of Mines (ODM) and Oklahoma Conservation
Commission (OCC).

   5.  There are currently 50 active and exploratory surface coal mining and reclamation
sites in Oklahoma that require periodic inspections, commonly referred to as "inspectable

units." All of these operations are found within the Muscogee (Creek) Nation, Cherokee Nation, and Choctaw Nation of Oklahoma Reservations. Of these 50 sites, 26 are considered abandoned sites, meaning that the operator failed to reclaim the site according to its permit and forfeited its bond; on these sites, ODM is supposed to use bond forfeiture proceeds to reclaim the site. Many of these abandoned sites have been sitting unreclaimed for decades because there was insufficient bond to complete the reclamation. Of the remaining 24 surface coal mining operations, most are in some phase of reclamation and not actively removing coal. Only one site is actively removing coal, Joshua Coal's permit no. 20/25-4238, and a few other operations have coal that could be removed if the coal markets recover enough to make the operations economically viable. One site is exploratory.

6.   My staff prepared a map depicting the location of all Title V inspectable units and Title IV AML sites, referred to in the map as "Title IV PADS Locations." PADS is an acronym for "Problem Area Descriptions," and is the term the OSMRE AML program uses to describe an area with AML features within its e-Abandoned Mine Land Inventory System (e-AMLIS) database. The map also includes a chart depicting which Reservation each Title V inspectable unit is located. In my capacity as the Director of TFO, I routinely request my staff to develop these maps for demonstrative and technical purposes. The map, including the chart to the left, is based off of the most current and accurate data available. For active sites, ODM GIS shape files were used. For some of the abandoned mine sites, the locations were based on a GIS shapefile sent to OSMRE by ODM in 2016. For approximately 10 of the abandoned sites, OSMRE staff digitized

4

permit boundaries based on hard copy maps of the sites. It is, to the best of my knowledge and belief, an accurate representation of the locations of the inspectable units and AML sites within the Muscogee (Creek) Nation, Choctaw Nation of Oklahoma, and Cherokee Nation Reservations. A true and correct copy of this map and chart is attached hereto as Exhibit A.

7. In November 2020, the Department determined that lands within the exterior boundaries of the Muscogee (Creek) Nation Reservation are Indian lands and subject to OSMRE regulation under SMCRA.

8. On or about December 18, 2020, I participated in a call with OCC, OSMRE, and the Department's Office of the Solicitor to discuss the potential ramifications of *McGirt* on Oklahoma's AML program.

9. In January 2021, we began planning how OSMRE should transition regulatory and AML duties from Oklahoma to OSMRE on lands within the Muscogee (Creek) Nation Reservation.

10. Having started my career in a state regulatory program, I was aware that transitioning regulatory and AML duties away from Oklahoma to OSMRE might be difficult for Oklahoma because of the loss of funds and potential impacts to staff. I reached out to both ODM and OCC to reiterate that the need for OSMRE to take over these duties was not because of something Oklahoma did but because of the *McGirt* decision and that I understood that this may be a difficult time for staff. For this reason, one of my initial goals for our transition planning was to allow Oklahoma some time to wind down its regulatory and AML programs.

11. Initially, OSMRE's transition plan contemplated OSMRE as the regulatory authority on surface mining and reclamation operations only on the lands within the Muscogee (Creek) Nation Reservation because *McGirt* only addressed that reservation. Because so few surface coal mining and reclamation operations are located within the borders of the Muscogee (Creek) Nation Reservation, I determined that the TFO did not need to hire additional OSMRE personnel to perform its regulatory or AML duties on those Indian lands.

12. On April 2, 2021, OSMRE sent letters to ODM notifying them that lands within the Muscogee (Creek) Nation were Indian lands. After that date, OSMRE's interactions with ODM and OCC began to sour despite OSMRE's desire, as stated in the April 2 letters, to work with Oklahoma to smoothly transfer regulatory authority. I was listed as the OSMRE point of contact in the letters.

13. On April 16, 2021, I was copied on a letter from then Oklahoma Attorney General Mike Hunter to OSMRE's Deputy Director, which among other things, stated that he was "advising that no state agency should comply with it without further discussion."

14. On April 27, 2021, I emailed OCC and ODM and requested their original permit applications, other necessary permits, all amendments, and other relevant records for surface coal mining and reclamation operations and AML sites on the lands within the Muscogee (Creek) Nation Reservation.

15. On April 28, 2021, Ms. Mary Ann Prichard, the Director of ODM, sent me a letter stating that the ODM records I requested would be ready for pick-up at ODM's Office in Tulsa on April 30. This letter made clear that ODM was providing the records "in the

6

spirit of courtesy" and did not waive any legal arguments. After my staff picked up and reviewed the records, it was clear that ODM only provided inspector copies, not the originals requested, and the records did not include records of violations.

16. Also, on April 28, I received an email from Mr. Robert Toole, the AML Reclamation Program Director for OCC, responding to my email. In his email he stated that he had "been instructed to provide you with a copy of the letter that Oklahoma Attorney General Mike Hunter sent to OSMRE and inform you that OCC-AML has been asked not to comply with your request for the time being."

17. On April 30, 2021, I responded to Mr. Toole's email informing him that pursuant to the Federal grant regulations, staff from TFO would be at OCC's office on May 3 "to review and obtain all records related to coal mining located within the exterior boundaries of the Muscogee (Creek) Nation Reservation."

18. A few hours later, Mr. Toole responded that OCC had meetings scheduled but had "been diligently scanning files to provide copies of requested information but are not yet completed." Mr. Toole indicated that OCC should have the electronic copies ready for OSMRE to pick-up on Thursday, May 6, 2021. On or about that date, a staff member from my office picked up the USB drive with scanned copies of all requested files.

19. While we were still focused on efficiently transitioning to our regulatory and AML roles on the Muscogee (Creek) Nation Reservation, in mid-March and early April 2021, we learned about the Oklahoma Court of Criminal Appeals' rulings in *Hogner v. Oklahoma* and *Sizemore v. Oklahoma*, which applied *McGirt* to the Cherokee Nation and

Choctaw Nation of Oklahoma Reservations and found that those reservations also had not been disestablished.

20. On June 8, 2021, OSMRE sent invitations for formal Government-to-Government consultations to the Alabama-Quassarte Tribal Town, Cherokee Nation, Choctaw Nation of Oklahoma, Kialegee Tribal Town, Muscogee (Creek) Nation, Thlopthlocco Tribal Town, and United Keetoowah Band of Cherokee Indians. Throughout the transition process, OSMRE has maintained communications and coordination with the affected Indian tribes. For example, on August 10, 2021, the three affected Indian tribes participated in a formal consultation meeting with OSMRE and the Bureau of Indian Affairs. In addition, on September 9, 2021, the Choctaw Nation of Oklahoma emailed me to ask that OSMRE provide training opportunities to the Tribe on the history and status of coal mining and reclamation and AML sites on the Choctaw Nation of Oklahoma Reservation as well as trainings on the coal mining permitting process.

21. On June 17, 2021, OSMRE Deputy Director Glenda Owens sent additional letters to ODM and OCC notifying ODM and OCC that OSMRE was now the regulatory authority for lands within the Cherokee Nation and Choctaw Nation of Oklahoma Reservations. As with the April 2, 2021, letters, these letters provided OCC and ODM an approximate 30-day transition period to maintain some routine and not irreversible actions while OCC and ODM coordinated with OSMRE for an orderly transfer.

22. To that end, on July 27, 2021, I sent an e-mail to ODM and OCC asking them for the records related to surface coal mining and reclamation operations and AML sites

8

within the Cherokee Nation and Choctaw Nation of Oklahoma. To date, I have received none of these records from either ODM or OCC.

23. At the same time OSMRE was reviewing and consulting with the Department's Office of the Solicitor about the potential effects of these state court decision, I, along with other OSMRE employees in Tulsa and in the Regional Office in Alton, Illinois, reassessed our transition plan. We also worked with staff in OSMRE's Western Region because they have significant experience as regulatory authority on Indian lands and addressing AML emergencies through the Federal Reclamation Program. As a result of this consultation with the Western Region, we have developed a short-term AML emergency plan for Oklahoma so that we would be ready to immediately address AML emergencies, if they arise.

24. In addition to considering how we would abate AML emergencies, we analyzed several factors in other aspects of our transition planning, including:

    a.  The number of inspectable units,

    b.  The size, scope, stage, and potential environmental issues of each inspectable unit,

    c.  The number of AML sites and their status,

    d.  ODM's and OCC's staff and organizational charts, and

    e.  Additional physical assets that may be required to support OSMRE's regulatory authority operations on Indian lands in Oklahoma (i.e., office space, vehicles, equipment, etc.).

9

25. As we developed our assessment, we requested information about specific AML sites and their operations from OCC, which OCC provided.

26. After completing our assessment, we developed both a short-term plan to act as the regulatory and reclamation authority on Indian lands in Oklahoma and a long-term plan for sustained operations as the regulatory and AML reclamation authority until such time that one or more of the Indian tribes submits, and receives approval for, a tribal program.

27. Our short-term plan relied on use of existing equipment as well as temporarily assigning current OSMRE personnel from other OSMRE offices to the TFO on a temporary duty assignment. The long-term plan calls for hiring 12 to 14 additional personnel for the TFO and acquiring additional office space and information technology. These plans and a new organizational chart were approved by OSMRE management in July 2021.

28. On July 2, 2021, I had a phone call with Mr. Trey Lam (Executive Director, OCC), Mr. Toole, and their in-house counsel about the status of OCC's grants. During that conversation, I informed OCC that OSMRE had disapproved OCC's grant application for fiscal year 2021 and an application for a grant amendment that OCC made to its open fiscal year 2020 grant. I explained that OCC had a significant amount of money left in the fiscal year 2020 grant and suggested that OCC revise their application to amend that grant to allow them to move money previously designated for AML construction projects to administrative expenses so they could address their current

10

administrative needs during the transition period. To my knowledge, OCC still has not applied for an amendment to the grant.

29. Although OSMRE's attempts to cooperate with ODM and OCC for a smooth and orderly transition seemed to be increasingly met with inaction from ODM and OCC, I wanted to give ODM and OCC every opportunity to work with my office during the approximately 30-day transition periods from OSMRE's April 2 and June 17 letters.

30. After these attempts, as well as good faith negotiations with Oklahoma after this lawsuit was filed, yielded no path for cooperation with ODM or OCC, OSMRE and the TFO moved forward with regulating surface coal mining and reclamation and operations and performing necessary AML reclamation on Indian lands in Oklahoma in accordance with SMCRA and other Federal laws.

31. To that end, over the last month, inspectors from the TFO have performed inspections and site visits on four operations. By the end of September 2021, OSMRE anticipates completing routine inspections on all inspectable units on Muscogee (Creek) Nation, Cherokee Nation, and Choctaw Nation of Oklahoma Reservations. Routine inspections will continue at the appropriate intervals on all inspectable units. OSMRE staff are prepared to issue notices of violation or cessation orders at any sites that fail to meet the requirements of SMCRA and will follow up with any appropriate penalties.

32. For example, at a recent inspection on Georges Colliers, Inc. (GCI) permit no. 84/86-4105, commonly called the Pollyanna 2 Mine, OSMRE issued an imminent harm cessation order (IHCO), C21-030-561-001. OSMRE's inspectors issued this order for a failure to comply with permitted effluent limitations. An impoundment was found to be

11

discharging water with a pH of approximately 3.5. A follow-up inspection on September 10, 2021, showed that the discharging water had a pH of approximately 2.8. As of the September 10 inspection the operator had not taken any action to abate this violation. This permit was the subject of an ODM bond forfeiture sometime in May 2021.

33. Specifically, on June 1, 2021, in response to a May 28 email inquiry from OSMRE staff about GCI's financial difficulties, Ms. Rhonda Dossett, ODM's Coal Program Director, wrote in an email that ODM had collected "all the GCI 4105 cash bonds from the bank as part of a 'friendly forfeiture'" and that the funds had "been deposited in the State Treasurer's office for safekeeping." As "friendly forfeiture" is not a term used in SMCRA or ODM's approved program, after being notified of the "friendly forfeiture" by my staff, I emailed Ms. Dossett some follow up questions about the forfeiture process and how the forfeited funds were being managed in the Treasury. At the September 10, 2021, inspection, OSMRE staff found no indication that ODM was treating the acid discharge with the forfeited funds.

34. Some of OSMRE's regulatory authority activities have been made more difficult by ODM's and OCC's actions and inactions, such as the failure to provide OSMRE with the requested records, which required TFO staff to retrieve property ownership information from each county courthouse in the counties in which the mines are located. Without these records, OSMRE does not have access to the permit that ODM approved, making it difficult to determine whether the operation is mining in accordance with the terms and conditions of its permit. Additionally, because ODM has refused to provide information about active notices of violation, OSMRE inspectors do not know the history

12

of any environmental harms or proposed abatement plans for correcting violations at the mine site.

35. Moreover, ODM has continued to take actions that OSMRE has specifically demanded that they stop, such as releasing bonds and processing permit revisions. If the State reduces, releases, or forfeits bonds on non-Federal lands permits before they are made payable to OSMRE as part of the process of transitioning regulatory authority, OSMRE has limited means to recover that money and ensure reclamation meets Federal Indian lands standards. For example, OSMRE could demand that a company increase its bond amount or acquire a new bond but, if the company if in financial distress, obtaining additional bonding may not be possible. Similarly, OSMRE has broad authority to pursue criminal penalties and civil actions to compel compliance with SMCRA. *See* 30 C.F.R. parts 845, 846, and 847. Unfortunately, these procedures are time- and resource-intensive, and it is not certain that OSMRE would recover the amount needed to fully reclaim the mines if the operators are in financial distress.

36. For example, one day after receiving our June 17 letter that stated that "ODM should not undertake any action with irreversible or irreparable adverse consequences for OSMRE's abilities to administer SMCRA within the boundaries of the Cherokee Nation of Choctaw Nation Reservations, including but not limited to approving permitting actions and releasing, revoking, or forfeiting bonds," Phoenix Coal Co. submitted an application for final phase III bond release on permit nos. 06/11-4276 and 04/09-4264, which are located within the Cherokee Nation Reservation. OSMRE advised ODM to not

13

process these bond release applications. However, on July 26, 2021, ODM conducted final bond release inspections at both sites.

37. OSMRE attended phase II bond release inspections on Phoenix Coal Co. permits nos. 14/19-4287 and 18/23-4270 on March 28, 2021. OSMRE emailed its inspection reports to ODM on June 3, 2021. On August 25, 2021, ODM approved a Phase II bond release on Increment #2 of Phoenix Coal Co. permit no. 14/19-4287, which is located within the Cherokee Nation Reservation. This action released a letter of credit for $152,280 back to the operator. ODM approved phase II bond release for Increment #5 of permit no. 18/23-4270, also located within the Cherokee Nation Reservation, on September 9, 2021. This action released a letter of credit for $98,550 back to the operator.

38. According to ODM's website and an ODM-issued notice from August 16, 2021, ODM is also processing a major permit revision application on Farrell-Cooper Mining Company (FCMC) permit no. 1722-4285F, submitted on August 11, 2021, to "lower the bond to an amount that represents the current conditions which will allow the operator to keep the permit active while the metallurgical coal market recovers." This operation is located within the Choctaw Nation of Oklahoma Reservation.

39. ODM is also processing a permit revision application from Brazil Creek Minerals on permit no. 18/23-4254, which is located within the Choctaw Nation of Oklahoma Reservation, for an "as-built" pond.

40. On July 28 and 29, 2021, OSMRE met with representatives from Travelers Insurance, ODM, FCMC, and the Choctaw Nation of Oklahoma for site visits at several

14

FCMC mine sites. Travelers Insurance is the company providing surety bonds for most of FCMC's surface coal mining operations in Oklahoma. During those visits, Travelers Insurance explained that it was paying FCMC to do the reclamation required under FCMC's ODM-approved permits using FCMC equipment and personnel. Normally, FCMC would do this reclamation itself but claims that it does not have the resources to do this work. Travelers indicated that it would be more cost effective for Travelers to pay FCMC to do the reclamation work required on its own permits than to hire a different reclamation company to do the work. ODM approves of this approach, and Travelers has asked OSMRE to approve this approach as well. Unfortunately, this would require OSMRE to sign off on these ODM-issued permits without an opportunity to ensure that these permits meet the requirements of the Federal Indian lands program, which is something that OSMRE cannot agree to.

41. By information and belief, ODM held at least approximately $19,225,019 in SMCRA Title V bonds as of June 30, 2021. Of that, approximately $7,935,582 cover permits on Federal lands. OSMRE is a co-payee on bonds on Federal lands permits. Therefore, ODM is not able to release any of those bonds without OSMRE's approval. However, on non-Federal lands permits, ODM is the only payee on those bonds, totaling approximately $11,289,436 as of June 30, 2021. As noted above in paragraph 37, within the last month, ODM has released approximately $250,830 of bonds on non-Federal lands within the Cherokee Nation Reservation. Thus, upon information and belief, ODM currently is the sole payee of bonds worth approximately $11,038,606 for operations on Indian lands.

42. I am concerned that ODM could reduce, release, or forfeit some of those bonds without ensuring that all necessary reclamation has occurred. Upon my information and belief, the permits at the greatest risk of being inappropriately reduced, released, or forfeited by ODM for operations on Indian lands include: (1) the two Phoenix Coal Co. permits that have applied for but not yet received some amount of bond release (nos. 04/09-4270 for $50,000; 06/11-4276 for $29,980), (2) all of FCMC's non-Federal permits (because ODM is processing a bond reduction on at least one permit and negotiating a bond release agreement with Travelers Insurance and FCMC in a manner that does not comply with SMCRA) (Nos. 19/24-4279 for $2,588,600; 17/22-4268 for $2,113,164; 20/25-4274 for $976,986; and 15/20-4280 for $1,936,900), and (3) the remaining non-Federal GCI permit (because ODM forfeited the other GCI bond in May 2021) (No. 18/23-4289 for $122,197). While ODM potentially could release all non-Federal land bonds, the specific non-Federal land bonds identified above, totaling $7,817,827, are, in my professional judgement, at greatest risk of being reduced, released, or forfeited by ODM in the near term.

43. ODM also still holds funds from forfeited bonds, such as the funds from the forfeited GCI permit no. 84-86/4105. These funds are supposed to be used to complete reclamation at the abandoned site. Due to the transition from ODM to OSMRE, there is a risk that these funds will not be used by ODM to reclaim those sites, creating a risk of environmental harm, and will not be transferred to OSMRE to complete the reclamation work. In the event OSMRE does not have the bond forfeiture monies to reclaim the abandoned sites, OSMRE will be required to take alternative enforcement actions against

16

the owners and controllers of unreclaimed surface coal mining and reclamation operations to ensure reclamation work is completed. As mentioned above, alternative enforcement actions require significant time and resources and full recovery is not guaranteed. For example, alternative enforcement may become increasingly difficult with the passage of time as environmental conditions can worsen and owners and controllers may be more difficult to locate, have fewer financial resources, and/or pass away.

44. On September 10, 2021, Oklahoma Attorney General John O'Connor sent a letter to OSMRE Regional Director Al Clayborn notifying OSMRE that Attorney General O'Connor had directed ODM and OCC to not respond to OSMRE's recent correspondence except as required by SMCRA and its implementing regulations. The recent correspondence referenced in O'Connor's letter include, among other things, my July 26, 2021, emails to ODM and OCC requesting records related to coal mining within the exterior boundaries of the Cherokee Nation and Choctaw Nation of Oklahoma.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2021.

JOSEPH R. MAKI

17

# Maki Decl. Exhibit A

# Oklahoma Title IV PADS and Title V Mines within Tribal Boundaries

## Title V Permits

| Permittee | Mine Name | Permit Number | Tribe |
|---|---|---|---|
| Alpine Construction | Test Burn | TB 85-1 | Choctaw Nation |
| Alpine Construction | Alpine 7 | 83/88-4088 | Choctaw Nation |
| Alpine Construction | Alpine 2 | 84/89-4114 | Choctaw Nation |
| Alpine Construction | Alpine 11 | 86/91-4158 | Choctaw Nation |
| Alpine Construction | Alpine 11 | 87/92-4168 | Choctaw Nation |
| Alpine Construction | Alpine 12 | 88/93-4171 | Choctaw Nation |
| Bill's Coal Company | Welch | 79/80-2030 | Cherokee Nation |
| Brazil Creek | Shady Point | 18/23-4254F | Choctaw Nation |
| Cavanal Minerals, LLC. | Milton | 18/23-4269F | Choctaw Nation |
| Coal Creek | Red Bank | 04/09-4246F | Choctaw Nation |
| Eastern Oklahoma Quarries | Lincoln Power | 16/21-4272 | Choctaw Nation |
| Farrell-Cooper Mining | Liberty 3 | 17/22-4268 | Choctaw Nation |
| Farrell-Cooper Mining | Rock Island | 17/22-4262F | Choctaw Nation |
| Farrell-Cooper Mining | Liberty 5 | 20/25-4274 | Choctaw Nation |
| Farrell-Cooper Mining | Bull Hill | 14/19-4257F | Choctaw Nation |
| Farrell-Cooper Mining | Liberty 6 | 19/24-4279 | Choctaw Nation |
| Farrell-Cooper Mining | Liberty 7 | 15/20-4280 | Choctaw Nation |
| Farrell-Cooper Mining | Bull Hill #2 | 16/21-4293F | Choctaw Nation |
| Farrell-Cooper Mining | McCurtain | 17/22-4285F | Choctaw Nation |
| GCI | Pollyanna #2 | 84/86-4105 | Choctaw Nation |
| GCI | Pollyanna #8 | 15/20-4243F | Choctaw Nation |
| GCI | Pollyanna 8N | 18/23-4289 | Choctaw Nation |
| Great American Coal Co. | Test Burn | TB 84-1 | Choctaw Nation |
| Great American Coal Co. | No name | 84/87-4119 | Choctaw Nation |
| Great National | No name | 79/81-2019 | Choctaw Nation |
| Great National | No name | 80/81-3028 | Choctaw Nation |
| Great National | No name | 80/81-3076 | Choctaw Nation |
| Imperial Coal | No name | 78/79-042 | Cherokee Nation |
| Joshua Coal | Metropolis Mine | 15/20-4238 | Muscogee (Creek) Nation |
| K&D | K & D 2 & 3 | 78/79-068 | Cherokee Nation |
| K&R Coal Co. | Ryan 2 | 92/97-4148 | Choctaw Nation |
| Love,LLC | Shady Point | 18/23-4292 | Choctaw Nation |
| McNabb Coal | North McNabb | 79/80-2013 | Muscogee (Creek) Nation |
| McNabb Coal | North | 80/81-3017 | Muscogee (Creek) Nation |
| McNabb Coal | McNabb | 80/81-3096 | Muscogee (Creek) Nation |
| Oklahoma Coal Development | Blake 1 | 92/97-4214 | Choctaw Nation |
| Ouro Mining | Heavener East #2 | 18/23-4263F | Choctaw Nation |
| Ouro Mining | Heavener East #3 | 20/25-4266F | Choctaw Nation |
| Phoenix Coal | Alluwe 2 | 04/09-4264 | Cherokee Nation |
| Phoenix Coal | Kelly Ranch | 18/23-4270 | Cherokee Nation |
| Phoenix Coal | Lipe | 06/11-4276 | Cherokee Nation |
| Phoenix Coal | Most | 14/19-4287 | Cherokee Nation |
| Phoenix Coal | Spur | 17/22-4290 | Cherokee Nation |
| Redman-Dunstead | Redman 5 &6 | 80/81-3106 | Muscogee (Creek) Nation |
| Richards Coal | Taft | 84/89-4099 | Muscogee (Creek) Nation |
| Southwest Resources | No name | 80/81-3131 | Choctaw Nation |
| Turner Brothers Inc. | Porter 2 | 82/87-4037 | Muscogee (Creek) Nation |
| Turner Brothers Inc. | Rogers 1 | 84/87-4117 | Choctaw Nation |
| Westhoff | No name | 83/85-4096 | Choctaw Nation |

- Oklahoma TitleIV PADS Locations
- Oklahoma Title V Mines
- Oklahoma Counties

Data Source: Approximately 38 of Title V permit location were received from Oklahoma Department of Mines (ODM) in 2016 as GIS shapefile format (standard of encoding geographical information into a computer file) . Per TFO request, ODM emailed scanned copy of 11 abandoned mine maps in 2017 to TFO. TFO georeferenced and digitized these 11 maps and converted them into GIS shapefile format. All the title IV PAD locations were retrieved from (https://okmaps.org/ogi/search.aspx).

Esri, USGS

Prepared by: OSMRE, Tulsa Field Office