## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. CIV-21-719-F |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF THE INTERIOR, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

After the Supreme Court determined in *McGirt v. Oklahoma*, __ U.S. __, 140 S.Ct. 2452 (2020), that the Creek Nation's reservation had never been disestablished, the Department of the Interior and the Office of Surface Mining Reclamation and Enforcement stripped Oklahoma of its ability to regulate surface coal mining activities within the Nation's reservation land. Plaintiffs, the State of Oklahoma and various state agencies and officials, initiated this action to contest defendants' actions. The Nation now moves to intervene (doc. no. 22) for the exclusive purpose of seeking dismissal of the case. Plaintiffs and defendants each filed a response opposing intervention and the Nation filed a reply (doc. nos. 44, 45, 48). As explained below, the Nation is not entitled to intervene in this case because its interests are adequately represented by the existing parties.

## I. BACKGROUND

Upending the understanding of the State of Oklahoma, the federal government, and some might even say the Creek Nation itself,[1] the Supreme Court in *McGirt v. Oklahoma,* __ U.S. __, 140 S.Ct. 2452 (2020), found that the Creek Nation's reservation in eastern Oklahoma was never disestablished. The specific question before the Court in *McGirt* was whether the land meets the definition of "Indian Country" for purposes of the Major Crimes Act ("MCA"). *Id.* at 2459. In holding that it does, the Court recognized that the decision could have "significant consequences for civil and regulatory law" because "many federal civil laws and regulations do currently borrow from [the MCA] when defining the scope of Indian country." *Id.* at 2480. The dissent was more direct, predicting that the decision would lead to "extensive litigation" over who may exercise regulatory authority on the land. *Id.* at 2501 (Roberts, C.J. dissenting). This case presents one area where that prediction has come to pass: the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1201 *et seq.*

SMCRA is "a comprehensive statute that regulates all surface coal mining operations." *United States v. Navajo Nation*, 556 U.S. 287, 300 (2009). It establishes minimum national standards for regulating surface coal mining but permits the states to assume regulatory authority on state lands through the adoption of an approved state regulatory program. 30 U.S.C. § 1253; *see also, Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 288 (4th Cir. 2001). In the absence of a state regulatory program, or where the activities occur on federal land, the federal government is responsible for implementing a regulatory program. 30 U.S.C. §§ 1254, 1273.

---

[1] *See McGirt*, 140 S. Ct. at 2499-2500 (Roberts, C.J. dissenting) ("…far from disputing Oklahoma's jurisdiction, the Five Tribes themselves have repeatedly and emphatically agreed that no reservation exists.").

SMCRA also provides that an Indian tribe may implement its own program regulating surface mining on reservation land. *Id*. at § 1300(j).

SMCRA is enforced by the Office of Surface Mining Reclamation and Enforcement ("OSMRE"), a federal agency within the Department of the Interior ("DOI"). In the wake of *McGirt*, OSMRE informed Oklahoma that it could no longer exercise regulatory authority over surfacing mining and reclamation activities within the boundaries of the Creek Nation's reservation because the land now meets the definition of "Indian lands" in SMCRA. According to OSCME, this categorization removes the land from state jurisdiction under SMCRA and, because the Nation does not have its own tribal regulatory program, jurisdictional authority to regulate surface mining defaults to the federal authorities.

Plaintiffs disagree with OSMRE's interpretation of SCMRA and seek injunctive and declaratory relief in this action. They contend that *McGirt's* holding does not apply to regulation of surface coal mining, that Oklahoma has jurisdiction under SMCRA to regulate surface coal mining activities within the boundaries of the Creek reservation, and that defendant's actions violated the Administrative Procedures Act ("APA"). The Nation seeks to intervene under Rule 24 both as of right and permissively. Interestingly, the Nation does not seek intervention for the purpose of advancing additional argument on the substantive issues raised in the Complaint. Instead, the Nation seeks to intervene for the exclusive purpose of seeking dismissal of this action on the grounds that it is a required party under Rule 19 that cannot be joined due to its sovereign immunity. Plaintiffs and defendants both object to the proposed intervention, arguing that the Nation's interests in this case are adequately represented by defendants.

Dismissal, as the Nation seeks, would, as a practical matter, mean that a federal court is powerless to adjudicate serious issues as to the authority of a federal agency, charged with responsibility for administration of a program created by a

federal statute (and funded in part with sizeable annual grants of federal funds), to terminate the state's participation in that federal program. That, in turn, would mean that, as a practical matter, there would be no forum in which the state could seek an adjudication of the legality of the federal actions it complains of in this action. Strictly speaking, these facts are determinative of nothing with respect to the motion now before the court. But they provide context.

## II. STANDARD OF DECISION

Rule 24 of the Federal Rules of Civil Procedure provides for intervention as of right for anyone who, on timely motion "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed.R.Civ.P. 24(a)(2). The Tenth Circuit "has historically taken a liberal approach to intervention" and views the burden on the proposed intervenor as "minimal." *Kane Cty., Utah v. United States,* 928 F.3d 877, 890-891 (10th Cir. 2019). But the Tenth Circuit has also cautioned that "one must be careful not to paint with too broad a brush in construing Rule 24(a)(2)." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (abrogated on other grounds). Rule 24 "is not a mechanical rule" but instead "requires courts to exercise judgment based on the specific circumstances of the case." *Id.* Thus, even where an applicant shows "an interest that could be adversely affected by the litigation," a court must apply "practical judgment…in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.*

Rule 24 also provides for permissive intervention where the potential intervenor shows that it "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). In exercising its discretion to allow permissive intervention, Rule 24 further instructs that "the court

must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at § 24(b)(3).

## III. DISCUSSION

### A. Intervention as of Right

The Nation asserts that it is entitled to intervene in this action because issues relating to its sovereignty and regulatory jurisdiction are at stake and the current parties will not adequately represent those interests. As there is no dispute that the Nation's motion to intervene is timely, the court considers only (1) whether the Nation has an interest that may, as a practical matter, be impaired or impeded by the disposition of the litigation; and (2) whether the existing parties will adequately represent its interest. *See WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009).

#### 1.  Impairment of Interest

Rule 24's interest requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1251–52 (10th Cir. 2001) (internal quotation omitted). To meet this requirement, "an applicant 'must have an interest that could be adversely affected by the litigation.'" *Kane Cty.*, 928 F.3d at 891 (quoting *San Juan Cty.*, 503 F.3d at 1199). Importantly, the interest "is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court." *WildEarth Guardians v. National Park Service*, 604 F.3d 1192, 1198 (10th Cir. 2010). A mere potential for impairment or an impairment that is contingent on the outcome of the litigation is sufficient to meet the "minimal burden" presented by this requirement. *Kane Cty.*, 928 F.3d at 891.

Here, plaintiffs seek a declaratory judgment that *McGirt's* holding does not apply outside the criminal law context and that Oklahoma has jurisdiction over

surface coal mining activities on the Creek Nation's reservation lands under SMCRA. This case therefore implicates important questions regarding who may exercise regulatory authority within the boundaries of the Nation's reservation. As a sovereign entity, the Nation has a direct interest in "the governance of that land and the events occurring upon it." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279 (10th Cir. 2012).  As a practical matter, if plaintiffs succeed on their claims, the Nation's ability to exercise general regulatory authority over the land at issue could be impaired. At the very least, the Nation's ability to implement its own SMCRA program in the future could be compromised. The Nation's interest in protecting its jurisdictional authority, and the potential for impairment of that interest if plaintiffs succeed on their claims, is sufficient to satisfy the minimal burden presented by Rule 24's interest requirement.[2]

In attempting to avoid this conclusion, plaintiffs argue that the Nation's concerns are misplaced because plaintiffs do not seek in this case to overturn *McGirt* or directly attacking the Nation's reservation status. But this argument construes the Nation's interest too narrowly. To satisfy the interest requirement, the intervenor need only show an interest *relating to* the transaction that is the subject of the action. *WildEarth Guardians*, 604 F.3d at 1198. The subject of this action is regulatory jurisdiction under SMCRA on the Nation's reservation land, and the Nation undoubtedly has an interest in who can exercise that jurisdiction. Thus, the Nation's sovereign interests are related to this action even if the particular legal issues raised

---

[2] Plaintiffs' claims under the APA similarly risk impairing the Nation's interests because a decision in plaintiffs favor "would require the federal agency to engage in an additional round of administrative planning and decision-making that itself might harm the movants' interests, even if they could participate in the subsequent decision-making." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1167 (10th Cir. 2017).

by plaintiffs' Complaint do not require the court to make a reservation status determination.

### 2. Adequate Representation

Although possessing an interest that may be impaired by the litigation, a nonparty will not be entitled to intervene under Rule 24 unless it can also show that its interest is not adequately represented by the existing parties. Fed.R.Civ.P. 24(a)(2). "The burden continues to be on the petitioner or movant in intervention to show that the representation by parties may be inadequate." *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). "An applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest." *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984). However, "the possibility of divergence of interest need not be great" and "it is enough to show that the representation 'may be' inadequate." *Nat. Res. Def. Council, Inc,* 578 F.2d at 1345.

As the Nation points out, this showing is "easily made" when the representative party is the government, because the government's obligation to represent the broader public interest is not typically "coextensive with the intervenor's particular interest." *Utah Ass'n of Ctys.*, 255 F.3d at 1254. For example, in *Kane Cty*, 928 F.3d at 894-895, an environmental group was permitted to intervene as of right in a suit regarding the scope of a right of way because the federal defendants represented broad interests that were not necessarily consistent with the environmental groups' desire to see the scope defined as narrowly as possible. Similarly, in *WildEarth Guardians*, 573 F.3d at 996-997, a coal company was permitted to intervene in a suit alleging that the DOI violated the APA and the National Environmental Policy Act because, even though the applicants and the

government shared the same general objective in defending the agency's decisions, the government had multiple objectives and "could well decide to embrace some of the environmental goals" of the opposing party.

But as the Tenth Circuit has explained, "[t]hese cases…are inapplicable where the objective of the applicant for intervention is identical to that of one of the parties." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (internal quotation omitted). In that scenario, adequate representation is presumed, even where the representative party is a government entity. *Id.*; *see also San Juan Cty.*, 503 F.3d at 1204. The presumption of adequate representation applies "even though a party seeking intervention may have different 'ultimate motivation[s]' from the governmental agency," so long as "its objectives are the same." *Tri-State*, 787 F.3d at 1072.

Applying these principles, the Tenth Circuit has found the government to be an adequate representative for a private party in several instances. In *San Juan Cty.*, 503 F.3d at 1167, the Tenth Circuit considered whether the United States, the DOI, and the National Park Service could adequately represent the interests of several conservation groups in a federal quiet title action. Recognizing that the presumption of adequate representation "should apply when the government is a party pursuing a single objective," the Tenth Circuit held that the federal defendants could adequately represent the applicant's interest because they shared the same objective of defending federal title to the property. *Id.* at 1204. In reaching this conclusion, the court was not persuaded that past disputes between the applicants and the federal defendants undermined their ability to provide adequate representation in the current litigation. *Id.* at 1206. Further, the court refused to infer inadequate representation from the federal defendants' opposition to intervention, instead finding "that their assertion that they will adequately represent [the applicant's] interests in this case is entitled to respect." *Id.*

*Tri-State*, 787 F.3d at 1073, reached a similar result. Tri-State, a regional electric cooperative, alleged that the New Mexico Public Regulation Commission's ("NMPRC") exercise of jurisdiction and suspension of Tri-State's wholesale electric rate increases violated the Commerce Clause. *Id.* at 1069. KCEC, an electric cooperative that purchased wholesale electricity from Tri-State and objected to the rate increases, moved to intervene. *Id.* at 1071. The Tenth Circuit denied intervention because KCEC and the NMPRC shared the same objective – preserving NMPRC's jurisdiction over Tri-State's wholesale electricity rates. *Id.* at 1073. In distinguishing this situation from cases where representation by a government entity was found to be inadequate, the Tenth Circuit explained that:

> This simply is not a case where the governmental agency must account for a 'broad spectrum' of interests that may or may not be coextensive with the intervenor's particular interest....Tri–State's suit challenges the constitutionality of a New Mexico statute granting the NMPRC power to, under certain circumstances, 'suspend' a G & T cooperative's rates, 'conduct a hearing' on the reasonableness of the rates, and 'establish reasonable rates.'...Thus, the suit presents a 'binary' issue— whether the New Mexico statute granting the NMPRC this authority accords with the Commerce Clause of the United States Constitution...The challenge does not require the NMPRC to strike some balance between the interest of electricity wholesalers, retailers, and the general public. Nor does it require the NMPRC to determine the reasonableness of Tri–State's current rates or establish reasonable rates. It simply requires the NMPRC to argue its authority under § 62– 6–4(D) does not violate the Commerce Clause.

*Id.* at 1073 (internal citations omitted).

As in *Tri-State*, this case concerns the government's exercise of its regulatory authority and presents a binary issue – whether SMCRA grants OSMRE regulatory jurisdiction over the lands recognized by *McGirt* to be within the boundaries of the Creek reservation. Resolving this question does not require OSMRE to "strike some balance" between multiple stakeholders or consider conflicting public interests; it

only requires OSMRE to defend its own federal regulatory jurisdiction. And in defending that jurisdiction, OSMRE will necessarily (and in fact already has) argue that the Nation's reservation land qualifies as "Indian lands" under SMCRA, a position that is in complete harmony with the Nation's interest in protecting its own jurisdiction and sovereignty.

The Nation indicates that its "overriding goal" is to "defend the Nation's jurisdiction within the reservation" and that it seeks to intervene to "protect its newly confirmed jurisdictional rights." Reply Br. 2, 6. This objective is virtually identical to OSMRE's objective because federal jurisdiction relies on a finding that the Nation's reservation qualifies as "Indian lands" under SMCRA and that the Nation could exercise jurisdiction if it chose to develop a tribal regulatory program. Thus, although the Nation's sovereign interests may sweep more broadly than the federal government's interests as a general matter, in the context of this case, defendants and the Nation share a common objective in seeing OSMRE's jurisdictional authority confirmed.

This conclusion is consistent with Tenth Circuit precedent holding that government defendants can adequately represent the interests of an Indian tribe, even when issues related to sovereignty are implicated. For example, in *U.S. v. Kansas*, 249 F.3d 1213, 1218 (10th Cir. 2001), the Miami Tribe of Oklahoma sought dismissal of an action for failure to join it as a necessary party under Rule 19. The underlying dispute concerned whether a tract of land acquired by the Miami Tribe qualified as "Indian lands" under the Indian Gaming Regulatory Act. After the National Indian Gaming Commission ("NIGC") concluded that the land met this definition, the State of Kansas sued the NIGC, several other federal entities, and officials from the Miami Tribe for violations of the APA. *Id.* at 1220. Thus, much like the instant case, *Kansas* involved "a dispute between federal, tribal, and state officials as to which sovereign has authority over the tract." *Id.* at 1225.

Despite the Miami Tribe's clear interest in the litigation, the Tenth Circuit held that it was not a required party because the claims focused on the propriety of an agency decision and the defendants' interests were "substantially similar, if not identical to the Tribe's interests in upholding the NIGC's decision." *Id.* at 1227. Similarly, here, OSMRE is an adequate representative for the Nation because they both share an interest in seeing OSMRE's decision to strip Oklahoma of its regulatory jurisdiction upheld. *See also Sac & Fox Nation of Missouri v. Norton,* 240 F.3d 1250, 1253 (10th Cir. 2001) (concluding that Wyandotte Tribe was not a required party to action challenging Secretary of the Interior's decision to take tract of land into trust on behalf of tribe and approve gaming activities because "[a]s a practical matter, the Secretary's interest in defending his determinations is 'virtually identical' to the interests of the Wyandotte Tribe.").[3]

In seeking to demonstrate that OSMRE and the DOI cannot adequately represent its interest, the Nation points out that it has a history of adversarial relations with the federal government. But the fact that there may have been prior disputes between the Nation and the federal government does not indicate that representation will be inadequate in this matter, particularly given that OSMRE has "displayed no reluctance" to fully defend its position. *San Juan Cty.*, 503 F.3d at 1206. Similarly, OSMRE's objection to intervention does not give rise to an inference of inadequate representation. *Id.* Defendants may oppose intervention for reasons that do not compromise their ability to represent the Nation's interests and, in any event,

---

[3] The case relied on by the Nation, *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1275 (10th Cir. 2012), is distinguishable. There, the Tenth Circuit dismissed the case for failure to join the Eastern Shoshone Tribe, a necessary party that could not be feasibly joined due to sovereign immunity. But *N. Arapaho Tribe* concerned the designation of land as "Indian Country" in the first instance. *Id.* at 1277. Here, in contrast, the Supreme Court has already resolved that question and all that remains is to determine whether OSMRE properly interpreted and applied SCMRA following *McGirt*.

adequate representation can exist "even though a party seeking intervention may have different 'ultimate motivation[s]' from the governmental agency." *Tri-State Generation*, 787 F.3d at 1072–73 (alterations in original). Moreover, "representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Sanguine*, 736 F.2d at 1419. And, despite the Nation's concerns about the potential for settlement, representation is not "inadequate merely because the representative enters into a [settlement], because any case, even the most vigorously defended, may culminate in a [settlement]." *Kane Cty.*, 928 F.3d at 892 (internal quotation omitted) (alterations in original).

Rule 24, although posing only a "minimal burden" to intervention as of right, nevertheless requires courts to "apply 'practical judgment' when 'determining whether the strength of the interest and the potential risk of injury to that interest justify intervention.'" *Kane Cty.*, 928 F.3d at 891 (quoting *San Juan Cty.*, 503 F.3d at 1199). Although the Nation plainly has an interest in the outcome of this litigation, the potential risk of injury to that interest is significantly reduced by the presence of OSMRE and the DOI, who share a common objective with the Nation with respect to the issues raised in this case. Accordingly, "based on the specific circumstances of the case," and considering "the practical effect of the litigation on the applicant for intervention," the court finds that the Nation is not entitled to intervene as of right. *WildEarth Guardians,* 573 F.3d at 995 (internal quotation omitted).

## B. Permissive Intervention

If not permitted to intervene as of right, the Nation alternatively seeks permissive intervention for the limited purpose of moving for dismissal. Permissive intervention is "a matter within the district court's discretion." *City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (internal quotation omitted). Here, even assuming the Nation "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P.

24(b)(1)(B), permissive intervention is not warranted because the federal defendants will adequately represent the Nation's interest in this case. *See Tri-State Generation,* 787 F.3d at 1075 (affirming denial of permissive intervention because defendant would adequately represent applicant's interests); *Ozarks,* 79 F.3d at 1043 (same). Accordingly, the court finds that the Nation is not entitled to intervene permissively.

## IV. CONCLUSION

For the reasons explained above, the Motion of the Muscogee (Creek) Nation for Limited Intervention (doc. no. 22) is **DENIED**.

IT IS SO ORDERED this 1st day of November, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0719p014.docx