## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

1. STATE OF OKLAHOMA,

2. KEVIN STITT, in his official capacity
   as Governor of Oklahoma,

3. OKLAHOMA DEPARTMENT OF
   MINES,

4. OKLAHOMA CONSERVATION
   COMMISSION,

                          *Plaintiffs*,

v.

1. UNITED STATES DEPARTMENT OF
   THE INTERIOR,

2. DEBRA A. HAALAND, in her official
   capacity as Secretary of the Interior,

3. OFFICE OF SURFACE MINING
   RECLAMATION AND
   ENFORCEMENT,

4. GLENDA OWENS, in her official
   capacity as Acting Director of the
   Office of Surface Mining Reclamation
   and Enforcement,

                          *Defendants*.

Civil Action No: CIV-21-719-F

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR JUDICIAL REVIEW

## I.    INTRODUCTION

Plaintiffs the State of Oklahoma, Kevin Stitt, in his official capacity as Governor of Oklahoma, Oklahoma Department of Mines ("ODM"), and Oklahoma Conservation Commission ("OCC") (together, "Plaintiffs") seek relief from Defendants' April 2, 2021 letters from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") (the "April 2 Letters"), or, in the alternative, the May 18, 2021 Notice of Decision (the "Notice of Decision"), through which Defendants purport to unlawfully strip Oklahoma of its jurisdiction to regulate surface coal mining and reclamation operations under Titles IV and V of the Surface Mining Control and Reclamation Act ("SMCRA" or the "Act") and to impose a Federal program in its place within the historic lands of the Muscogee (Creek) Nation.  Without any process whatsoever and virtually no legal analysis, the Department of the Interior, through OSMRE, asserts that the State of Oklahoma lacks the legal authority under SMCRA to continue to implement its surface coal mining and reclamation programs.

To support the April 2 Letters, or, alternatively, the Notice of Decision, Defendants rely on a novel and erroneous expansion of the U.S. Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), a decision that the Supreme Court explicitly limited to the application of federal criminal law under the Major Crimes Act.  Disregarding this express limitation, Defendants contend that Oklahoma, after successfully implementing, enforcing, and maintaining its SMCRA programs for over 30 years, now lacks jurisdiction to administer its programs within the historic lands of the Muscogee (Creek) Nation.  In furtherance of its unlawful decision to strip Oklahoma of its SMCRA programs, OSMRE informed ODM that OSMRE does not intend to authorize the distribution of ODM's

remaining grant funds for 2021 and denied OCC's applications for abandoned mine land (AML) program grant funding ("Grant Funding Denials"), which OSMRE must provide to states with approved SMCRA programs and is necessary to support Oklahoma's ongoing programs and projects throughout the state.

Defendants are wrong.  The holding in *McGirt* is explicitly limited to the statutory definition of "Indian country" as it applies in federal criminal law under the Major Crimes Act.  *McGirt*, 140 S. Ct. at 2480.  The holding does not extend outside of that limited federal criminal context, and OSMRE errs in attempting to expand it to undermine Oklahoma's regulatory jurisdiction under SMCRA.

Real and justiciable controversies exist between Plaintiffs and Defendants over whether *McGirt* applies outside of the limited context of federal criminal law, and whether Oklahoma has jurisdiction for the regulation of surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.  OSMRE's unlawful notice does not even mention, let alone analyze, these important questions of law.  Declaratory and injunctive relief are requested to resolve these controversies.

Moreover, in issuing the April 2 Letters, or, alternatively, the Notice of Decision, Defendants failed to follow the required process under the APA for taking final agency action and the required process under SMCRA for disapproving a State program and preparing a Federal program.

Because Defendants' actions are arbitrary, capricious, and otherwise inconsistent with law in violation of SMCRA and the APA, Plaintiffs ask the Court to vacate the April

2 Letters, or, alternatively, the Notice of Decision, and the Grant Funding Denials and enjoin Defendants from acting further under each.

## II.    JURISDICTION AND VENUE

1.      Jurisdiction is proper in this United States District Court under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States, including 5 U.S.C. §§ 553, 701–706 (APA) and 30 U.S.C. § 1276(a)(1) (SMCRA).

2.      This Court has authority to declare the rights of any interested party requesting such declaration in a case of actual controversy within its jurisdiction. Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

3.      Defendants' April 2 Letters, or, alternatively, the Notice of Decision, purport to strip Oklahoma of its jurisdiction to administer its approved State program under SMCRA within the historic lands of the Muscogee (Creek) Nation, to prepare a Federal program in its place, and to deny funding on that basis.  This creates an actual, justiciable controversy between the parties.

4.      Plaintiffs have exhausted their administrative remedies and have no adequate remedy at law.

5.      The requested relief is proper under 28 U.S.C. §§ 2201–2202, 5 U.S.C. §§ 701–706, and 30 U.S.C. §§ 1276(a)(1), (c).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

7.      With respect to the claims arising under SMCRA, venue lies exclusively in this Court pursuant to 30 U.S.C. § 1276(a)(1) because the capital of Oklahoma is located within this judicial district.

### III.   PARTIES

8.      Plaintiff State of Oklahoma is a sovereign state, which has an interest in energy exploration and production and responsible environmental stewardship throughout Oklahoma.

9.      Plaintiff Kevin Stitt is named in his official capacity as the Governor of Oklahoma ("Governor").  The Governor oversees Plaintiff ODM and Plaintiff OCC.

10.      Plaintiff ODM has enforced and implemented various provisions of state- and federally-mandated programs in health, safety, mining, and land reclamation practices associated with surface and subsurface mining, including SMCRA.

11.      Plaintiff OCC administers the State program for reclaiming abandoned mine land pursuant to SMCRA.

12.      Defendant Debra A. Haaland is named in her official capacity as the Secretary of the Department of the Interior ("Secretary").  Defendant the Department of the Interior is an agency within the meaning of the APA.  *See* 5 U.S.C. § 551(1).  The Secretary and the Department of the Interior are charged at the federal level with administering SMCRA, through OSMRE.  30 U.S.C. § 1211(b), (c).

13.      Defendant Glenda Owens is named in her official capacity as the Acting Director of the OSMRE ("Director").  Defendant OSMRE is an agency within the meaning of the APA.  *See* 5 U.S.C. § 551(1).  Defendant OSMRE is a bureau of the Department of the Interior charged with administering SMCRA, including overseeing the implementation of State programs.  30 U.S.C. § 1211(b), (c).  Defendant Owens issued the April 2 Letters and the Notice of Decision.

## IV.    FACTUAL BACKGROUND

*The Surface Mining Control and Reclamation Act*

14.     Congress enacted SMCRA in 1977 to ensure, among other things, "that surface coal mining operations are so conducted as to protect the environment," and to "strike a balance between protection of the environment and agricultural productivity and the Nation's need for coal as an essential source of energy."  30 U.S.C. § 1202(d), (f). SMCRA regulates the overall construction, operation, and reclamation of surface coal mines.  *See id.* §§ 1201–1309b.

15.     Section 201 of SMCRA established the OSMRE in the Department of the Interior.  30 U.S.C. § 1211(a).  Congress created the OSMRE as the agency through which the Secretary exercises her responsibility for administering and implementing SMCRA. *See id.* § 1211(c).

16.     SMCRA created two major programs: (1) an AML reclamation program, funded by fees that operators pay on each ton of coal produced, to reclaim land and water resources adversely affected by coal mines abandoned before August 3, 1977, 30 U.S.C. §§ 1231–1244 ("Title IV"), and (2) a regulatory program to ensure that surface coal mining operations initiated or in existence after the effective date of the Act are conducted and reclaimed in an environmentally sound manner, 30 U.S.C. §§ 1251–1279 ("Title V").

17.     Title IV of SMCRA mandates that OSMRE provide AML grants to eligible States and Tribes that are funded from permanent (mandatory) appropriations.  *See id.* § 1232.  All coal operators pay fees to the Secretary of the Interior for deposit in the Abandoned Mine Reclamation Fund. *Id.* § 1232(a).  States receive a percentage allocation

of the fees collected in the State.  *Id.* § 1232(g).  To be eligible for the grant, the State must have an approved regulatory program administering SMCRA on existing mines.  *Id.* § 1235(c).

18.     Title V of SMCRA authorizes OSMRE to provide grants to States and Tribes to develop, administer, and enforce State and Tribal regulatory programs that address, among other things, the disturbances from coal mining operations.  *See id.* § 1295.

19.     Although SMCRA establishes a "nationwide program to protect society and the environment from the adverse effects of surface coal mining operations," *id.* § 1202(a), it assigns primary responsibility for administration of that program to the States:

> [B]ecause of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations, *the primary governmental responsibility* for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations subject to this chapter *should rest with the States*.

*Id.* § 1201(f) (emphasis added).

20.     To carry out its intent that States assume primary authority to develop, issue, and enforce regulations governing coal mining and reclamation operations, Congress included within SMCRA a program of cooperative federalism that allows States to assume primary responsibility for the regulation of surface coal mining and reclamation within their borders, subject only to very limited oversight from OSMRE.  This primary responsibility is commonly referred to as "primacy."

21.     To obtain primacy, a State must propose a regulatory program showing that it has, among other things: (1) "a State law which provides for the regulation of surface coal mining and reclamation operations in accordance with [the Act]"; (2) "a State law

7

which provides sanctions for violations of State laws, regulations, or conditions of permits"; (3) "a State regulatory authority with sufficient administrative and technical personnel"; (4) "a State law which provides for the effective implementations, maintenance, and enforcement of a permit system"; (5) "a process for coordinating the review and issuance of permits for surface coal mining and reclamation operations with any other Federal or State permit process applicable to the proposed operations"; and (6) "rules and regulations consistent with regulations issued by the Secretary pursuant to [the Act]." *Id*. § 1253(a).  The Secretary, through OSMRE, must review and approve or not approve the State program. *Id*. § 1253(b).

22.    Once the State has obtained approval of its program, State laws and regulations implementing SMCRA "become operative for the regulation of surface coal mining, and the State officials administer the program, . . . giving the State 'exclusive jurisdiction over the regulation of surface coal mining' within its borders." *Bragg v. W. Va. Coal Ass'n,* 248 F.3d 275, 288 (4th Cir. 2001) (quoting 30 U.S.C. § 1253(a)).

23.    If a State fails to obtain primacy, or fails to "implement, enforce, or maintain its approved State program as provided for in this [Act]," then the Secretary shall prepare a Federal program "for the regulation and control of surface coal mining and reclamation operations taking place on lands within any State not in compliance with this Act."  30 U.S.C. § 1254(a).  "Prior to promulgation and implementation of any proposed Federal program, the Secretary shall give adequate public notice and hold a public hearing in the affected State." *Id.* § 1254(c).

24.     Congress made "[a]ny action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal program" subject to judicial review. *Id.* § 1276(a)(l).

25.     Once a State obtains primacy, any alteration of an approved State program, referred to as an "amendment," must follow the procedure set forth in 30 C.F.R. § 732.17.

26.     Under 30 C.F.R. § 732.17, whenever the Director becomes aware of conditions or events that "change the implementation, administration or enforcement of the State program," or "indicate that the approved State program no longer meets the requirements of the Act," then the Director must determine whether a State program amendment is required and notify the State regulatory authority of the decision.  30 C.F.R. § 732.17(c), (e).

27.     If an amendment is required, the State shall, within 60 days after notification of the Director's decision, submit to the Director a proposed written amendment or a description of an amendment to be proposed, among other things.  *Id.* § 732.17(f)(1).  If the State does not submit a proposed amendment within 60 days, then the Director must begin proceedings under 30 C.F.R. § 733 "if the Director has reason to believe that such action is warranted because the State is not effectively implementing, administering, maintaining or enforcing all or part of its approved State program."  *Id.* § 732.17(f)(2).

28.     30 C.F.R. § 733 provides the procedure for substituting Federal enforcement of State programs or withdrawing approval of State programs.  The procedure requires written notice to the State, the opportunity for an informal hearing, and public notice and hearing.  *See id.* § 733.13(b), (c), (d).  If, upon review of the hearing and "all available

9

information, including the hearing transcript, written presentations and written comments," the Director concludes that the State has failed to implement, administer, maintain or enforce effectively all or part of the approved program, then the Director may substitute Federal enforcement of the State program or recommend to the Secretary that she withdraw approval of the State program. *Id.* § 733(e). If the Director decides to substitute Federal enforcement of a State program, then the Director must give public notice of its findings. *Id.* § 733.13(f).

29.    30 C.F.R. part 736 "establishes standards and procedures for the promulgation, implementation, maintenance, administration, revision and termination of a Federal program for a State for coal exploration and surface coal mining and reclamation operations on non-Federal and non-Indian lands within that State." *Id.* § 736.1. "[U]pon the withdrawal of approval of part of a State program under 30 CFR part 733," "[t]he Director shall promulgate a partial Federal program for [that] State." *Id.* § 736.11(a)(3). That promulgation requires, among other things, that OSMRE publish a notice in the Federal Register and a newspaper in the coal mining area of the affected State that includes the "basis, purpose and substance of the proposed Federal program," an opportunity for public comment, and an opportunity for a public hearing, if requested. *Id.* § 736.12(a)–(c). OSMRE must also, solicit comments from the heads of Federal agencies "concerned with or having special expertise relevant to the proposed Federal program." *Id.* § 736.12(c).

*Oklahoma's Primacy Under SMCRA*

30.     On February 28, 1980, Oklahoma, through the ODM, submitted the necessary proposed State program required by 30 U.S.C. § 1253(a) to the Secretary for approval.

31.     After providing significant opportunities for public review and comment and holding public hearings, OSMRE conditionally approved Oklahoma's State program under Title V on January 19, 1981.  *See* 45 Fed. Reg. 67,361-62 (Oct. 10, 1980); 46 Fed. Reg. 4,902 (Jan. 19, 1981).  After further public hearings and conferences between Oklahoma and OSMRE, OSMRE approved Oklahoma's permanent regulatory program. 47 Fed. Reg. 14,152 (Apr. 2, 1982).

32.     Oklahoma's Title V program has been amended pursuant to the procedures set forth in 30 C.F.R. § 732 twenty-eight (28) times.  *See* 30 C.F.R. § 936.15.

33.     Oklahoma, through the OCC, also has an approved State program under Title IV for abandoned mine reclamation.  *See id.* § 936.20.  That plan has been effective since January 21, 1982.  *See id.*

34.     With approved State programs for both coal mining and reclamation, Oklahoma subsequently entered a cooperative agreement with the federal government to allow ODM to also regulate mining on federal lands.  *See* 30 C.F.R. § 936.30.  The Governor of Oklahoma and the Secretary signed the agreement in August 1989, and it was published in the Federal Register in September 1989.  *See id*.

35.     Oklahoma has successfully implemented, managed, and enforced its approved State SMCRA programs for over 30 years.  See 52 Fed. Reg. 36,922 (Oct. 2, 1987); 30 C.F.R. § 936.10.

36.     Since approval of both programs, Oklahoma has received (and relies upon) AML grants and regulatory program grants to help fund the programs.

*McGirt v. Oklahoma*

37.     On July 9, 2020, the U.S. Supreme Court issued its decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).  The case came on a writ of certiorari to the Oklahoma Court of Criminal Appeals ("OCCA"), the State's court of last resort for criminal matters.

38.     The case concerned whether Oklahoma state courts had jurisdiction to try a citizen of the Creek Nation for certain criminal offenses.  *Id.* at 2459-60.  The Court reversed the OCCA's decision in a 5-4 ruling, holding that for the purposes of prosecuting criminal offenses under the federal Major Crimes Act ("MCA"), the historic lands of the Muscogee (Creek) Nation in eastern Oklahoma constituted "Indian country."  *Id.* at 2460-82.  As a result, the State of Oklahoma lacked jurisdiction to prosecute crimes committed by an Indian because the crimes occurred on lands that constituted "Indian country" under the MCA.  *Id.*

39.     By its terms, the holding of *McGirt* was restricted to "purposes of federal criminal law."  *Id.* at 2459.  *McGirt* did not address questions about regulatory jurisdiction within the historic lands of the Muscogee (Creek) Nation.  In fact, the Supreme Court disavowed those questions, stating that "[t]he only question before us … concerns the

statutory definition of 'Indian country' as it applies in federal criminal law under the [Major Crimes Act]." *Id.* at 2480.

40.     It is Plaintiffs' position that *McGirt* was incorrectly decided.  At a minimum, however, the Supreme Court's holding in *McGirt* does not extend to Oklahoma's primacy under SMCRA to regulate surface coal mining operations and reclamation within the historic lands of the Muscogee (Creek) Nation.

*Defendants' Unlawful Actions*

41.     On April 2, 2021, OSMRE sent letters to ODM and OCC stating that, pursuant to *McGirt*, "OSMRE and the Secretary of the Interior lack the authority to confer on the State of Oklahoma jurisdiction over lands within the exterior boundaries of the Muscogee (Creek) Nation Reservation."  Letter from OSMRE to Oklahoma Energy and Environment dated Apr. 2, 2021, attached as **Exhibit 1**; Letter from OSMRE to OCC dated Apr. 2, 2021, attached as **Exhibit 2**.  Accordingly, OSMRE asserted that "the State of Oklahoma may no longer administer a SMCRA regulatory program on lands within the exterior boundaries of the Muscogee (Creek) Nation Reservation."  *Id.*  OSMRE asserted that "[f]or lands within the exterior boundaries of the Muscogee (Creek) Nation Reservation, OSMRE is now the SMCRA Title V regulatory authority."  *Id.*

42.     The Oklahoma Attorney General responded to OSMRE's letters on April 16, 2021, explaining that "OSMRE's assertion of sole and exclusive jurisdiction is not well-supported by the legal citations offered in your letters."  Letter from Mike Hunter to Glenda Owens dated Apr. 16, 2021, attached as **Exhibit 3**.  The Oklahoma Attorney General

explained that because OSMRE's "demand appears to have no adequate basis in law, I am advising that no state agency should comply with it without further discussion." *Id.*

43.     On May 18, 2021, OSMRE published a one-page "Notice of Decision" in the Federal Register stating that pursuant to *McGirt*, OSMRE "is assuming jurisdiction over the SMCRA Title IV reclamation and Title V regulatory programs." 86 Fed. Reg. 26,941 (May 18, 2021).

44.     Based on the same assertions as in its April 2 Letters, or, alternatively, the Notice of Decision, on June 29, 2021, OSMRE informed ODM that it does not intend to authorize the distribution of ODM's remaining grant funds for calendar year 2021.  Letter from ODM to M. Mansinghani and K. Wagner dated June 30, 2021, attached as **Exhibit 4**.

45.     Based on the same assertions as in its April 2 Letters, or, alternatively, the Notice of Decision, on July 8, 2021, OSMRE denied OCC's application for the FY2021 AML grant and the amendment request to add carry over funding to the FY2020 AML grant.  Email from GrantSolutions to OCC dated July 8, 2021, attached as **Exhibit 5** (together with Ex. 4, "Grant Funding Denials").

46.     Moreover, OSMRE is refusing to allow ODM to access grant funding that OSMRE already approved under Oklahoma's Title V program.

47.     Unlike the lengthy, formal public process employed to establish the Oklahoma program and to make various amendments to the Oklahoma program throughout the last 30 years, OSMRE amended the Oklahoma program to exclude the historic lands of the Muscogee (Creek) Nation with a stroke of the pen behind closed doors.  OSMRE did not conduct an informal or formal hearing with Plaintiffs or the public prior to issuing the

April 2 Letters, or, alternatively, the Notice of Decision, or the Grant Funding Denials. Nor did OSMRE provide an opportunity for public review and comment prior to issuing the April 2 Letters, or, alternatively, the Notice of Decision, or Grant Funding Denials.

48.     The April 2 Letters, or, alternatively, the Notice of Decision, and Grant Funding Denials contain only conclusory statements and provide no detailed findings of fact or legal reasoning to support the conclusion that *McGirt*—a decision that by its terms is restricted to "purposes of federal criminal law"—deprives Oklahoma of jurisdiction over the existing SMCRA programs within the historic lands of the Muscogee (Creek) Nation.

49.     Plaintiffs and the public have already suffered and will continue to suffer severe and irreparable harm from the April 2 Letters, or, alternatively, the Notice of Decision, and the Grant Funding Denials.

50.     First, the April 2 Letters, or, alternatively, the Notice of Decision, unlawfully deteriorate Oklahoma's State sovereignty over the historic lands of the Muscogee (Creek) Nation, which are within Oklahoma's sovereign borders.

51.     Second, the April 2 Letters, or, alternatively, the Notice of Decision, impermissibly strip Oklahoma of its primacy by unlawfully transferring that authority to the Federal government.  The statutory and constitutional limitations on the authority of federal agencies protect citizens from the intrusion of the federal government into areas where local knowledge is critical to designing effective rules and policies.  As SMCRA recognized, the regulation of mining is such an area.  By displacing local regulatory authority in a manner inconsistent with the purpose of the statute, the April 2 Letters, or,

alternatively, the Notice of Decision, impede, rather than advance, efforts to balance the importance of coal to the nation's economy with environmental considerations.

52.    Third, the Grant Funding Denials eliminate the federal funding guaranteed to Oklahoma under Titles IV and V of SMCRA.  The federal grant for fiscal year 2020 (which ended on June 30, 2021) was approximately $2.8 million for OCC, but OSMRE is unlawfully denying any grant or grant amendment for FY2021.  The federal grant for calendar year 2021 (which ends December 31, 2021) is approximately $1.3 million for ODM, but OSMRE intends to unlawfully withhold $657,679 of the total.

53.    Fourth, because OSMRE has cut off federal funding to Oklahoma for the SMCRA programs, ODM and OCC have reduced or will be forced to further reduce their workforce and thus continue to implement and enforce their lawful SMCRA programs throughout the State, including within the historic lands of the Muscogee (Creek) Nation, with limited staff and resources.

54.    Fifth, the April 2 Letters, or, alternatively, the Notice of Decision, deprive Oklahoma of the ability to assess civil penalties for cessation orders and notices of violation for noncompliant mining activities within the historic lands of the Muscogee (Creek) Nation, thus reducing the funds Oklahoma would otherwise have to allocate to reclamation projects across the State.  *See* Okla Admin. Code § 460:20-61-13.

55.    Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek, in addition to a declaratory judgment and vacatur of the April 2 Letters, or, alternatively, the Notice of Decision, and the Grant Funding Denials, preliminary and permanent injunctive relief

enjoining Defendants from implementing, enforcing, or otherwise proceeding on the basis of the April 2 Letters, or, alternatively, the Notice of Decision, and Grant Funding Denials.

56.     An injunction is warranted and would serve the public interest because the April 2 Letters, or, alternatively, the Notice of Decision, and Grant Funding Denials impair Oklahoma's ability to protect land and water resources in accordance with local needs; threaten the existence of an industry Congress found "essential to the national interest," 30 U.S.C. § 1201(b); and have the potential to impose significant monetary and environmental costs on the State, businesses, and citizens.

57.     Plaintiffs' rights will be permanently impaired, and Defendants will continue to implement and enforce the illegal April 2 Letters, or, alternatively, the Notice of Decision, and the Grant Funding Denials, unless Defendants are enjoined and restrained by order of this Court.

58.     The harm to Plaintiffs outweighs any possible harm to Defendants.

## V.     CLAIMS FOR RELIEF

### COUNT ONE: DECLARATORY JUDGMENT

**Declaratory Judgment that *McGirt* Does Not Apply to Surface Coal Mining and Reclamation Activities and that Oklahoma Has Jurisdiction Under SMCRA to Regulate Surface Coal Mining and Reclamation Operations Within the Historic Lands of the Muscogee (Creek) Nation**

59.     Paragraphs 1 through 58 are incorporated herein by reference.

60.     The Supreme Court's holding in *McGirt* was limited to "the statutory definition of 'Indian country' as it applies in federal criminal law under the [Major Crimes Act]." 140 S. Ct. at 2480.

61.    *McGirt* does not reach any conclusions outside of this limited context.

62.    Due to its limited holding, *McGirt* does not bar Oklahoma from exercising its regulatory jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.

63.    Defendants assert in the April 2 Letters that under *McGirt*, "OSMRE and the Secretary of the Interior lack the authority to confer on the State of Oklahoma jurisdiction over lands within the exterior boundaries of the Muscogee (Creek) Nation Reservation." Ex. 1, at 2; Ex. 2 at 2.   On that basis, Defendants summarily assert that "the State of Oklahoma may no longer administer a SMCRA regulatory program on lands within the exterior boundaries of the Muscogee (Creek) Nation Reservation," and "OSMRE is now the SMCRA Title V regulatory authority" for those lands, and OSMRE will "assume authority of Oklahoma's AML reclamation program." *Id.*

64.    Further, Defendants assert in the Notice of Decision that under *McGirt*, the State of Oklahoma's authority to implement SMCRA is "necessarily foreclosed" within the historic lands of the Muscogee (Creek) Nation. *See* 86 Fed. Reg. 26,941.  On that basis, Defendants summarily assert that "OSMRE is assuming jurisdiction over SMCRA Title IV reclamation and Title V regulatory programs." *Id.*

65.    A real, justiciable controversy exists between Plaintiffs and Defendants over whether *McGirt* applies to surface coal mining and reclamation operations or, at a minimum, a real, justiciable controversy exists between Plaintiffs and Defendants over whether Oklahoma has jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.

66.     Plaintiffs seek a declaratory judgment that Oklahoma has jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.

**COUNT TWO: VIOLATION OF APA, 5 U.S.C. § 706**

**Whether a Rule or Adjudication, Defendants' Decision to Disapprove a State Program and Prepare a Federal Program for the Historic Lands of the Muscogee (Creek) Nation Was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law**

67.     Paragraphs 1 through 66 are incorporated herein by reference.

68.     The APA provides for judicial review of final agency action by persons "aggrieved" by such action.  5 U.S.C. § 702.

69.     The actions reviewable under the APA include "preliminary, procedural, or intermediate agency action or ruling . . . on the review of the final agency action," such as the April 2 Letters, or, alternatively, the Notice of Decision, here.  *Id.* § 704.

70.     The April 2 Letters are final agency actions under the APA because (1) they are not "merely tentative or interlocutory" but "mark the consummation of [OSMRE]'s decisionmaking process," and (2) they are actions "by which rights or obligations have been determined, or from which legal consequences will flow."  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016).

71.     Alternatively, the Notice of Decision is a final agency action under the APA because it marks the consummation of OSMRE's decisionmaking process.

72.     Under the APA, this Court has the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of

19

discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), and to set aside an agency decision made "without observance of procedure required by law," *id.* § 706(2)(D).

73.     Agency action is arbitrary and capricious when the agency engages in no careful and searching inquiry into the facts that support the agency's decision.  *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) ("The agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal citation and quotation marks omitted).

74.     Defendants issued the April 2 Letters, or, alternatively, the Notice of Decision, without adequate explanation, justification, or sufficient evidence in the record to support the action.

75.     The Notice of Decision failed to address or respond to the significant problems and matters that were raised by the Oklahoma Attorney General in his April 16, 2021 letter.  *See* Ex. 3; *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (agency action is "arbitrary and capricious if the agency … entirely failed to consider an important aspect of the problem").

76.     Defendants did not conduct an informal or formal hearing prior to issuing the April 2 Letters, or, alternatively, the Notice of Decision.

77.     Defendants did not provide an opportunity for public comment prior to issuing the April 2 Letters, or, alternatively, the Notice of Decision.

78.     Defendants failed to address potential implications of the April 2 Letters, or, alternatively, the Notice of Decision.  The April 2 Letters contain no discussion or

examination of the potential implications or harms to Plaintiffs and the public that might arise, and in fact have arisen, because of the Defendants' actions. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (agency action is "arbitrary and capricious if the agency … entirely failed to consider an important aspect of the problem"). And, although the one-page Notice of Decision contains a section entitled "Potential Implications of Substitution of Federal Authority," the Notice of Decision merely sets forth the purposes of Title IV and Title V of SMCRA. The Notice of Decision contains no actual discussion or examination of the "potential implications" of the Defendants' action.

79. The meager record in support of Defendants' April 2 Letters, or, alternatively, the Notice of Decision, indicates that no searching and careful inquiry was conducted, and Defendants provided no detailed factual or legal basis to support the conclusion that *McGirt* deprives Oklahoma of its regulatory jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.

80. Whether rules or adjudications, Defendants' April 2 Letters, or, alternatively, the Notice of Decision, are inconsistent with law, because Defendants erroneously interpreted *McGirt* to apply outside of its limited context (federal criminal law) and to deprive Oklahoma of its regulatory jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.

81.    *McGirt* does not bar the State of Oklahoma from exercising its regulatory jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation.

82.    Whether rules or adjudications, Defendants' April 2 Letters, or, alternatively, the Notice of Decision, are also inconsistent with law because Defendants misinterpreted SMCRA to affirmatively designate OSMRE as the regulatory authority over surface coal mining and reclamation operations on Indian lands where a tribe has not obtained primacy. SMCRA does not affirmatively make that designation.  *See* 30 U.S.C. § 1300.

83.    Whether rules or adjudications, the April 2 Letters, or, alternatively, the Notice of Decision, are arbitrary, capricious, abuses of discretion, or otherwise not in accordance with law.  Plaintiffs are therefore entitled to the relief requested below.

### COUNT THREE: VIOLATION OF APA, 5 U.S.C. § 706

**Defendants' Decision to Deny Grant Funding Was Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance with Law**

84.    Paragraphs 1 through 83 are incorporated herein by reference.

85.    Under the APA, this Court has the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and to set aside an agency decision made "without observance of procedure required by law," *id.* § 706(2)(D).

86.    Defendants issued the Grant Funding Denials without adequate explanation, justification, or sufficient evidence in the record to support the action.

87.     Defendants did not conduct an informal or formal hearing prior to issuing the Grant Funding Denials.

88.     Defendants did not provide an opportunity for public comment prior to issuing the Grant Funding Denials.

89.     Defendants failed to address potential implications of the Grant Funding Denials.

90.     The meager record in support of Defendants' Grant Funding Denials indicates that no searching and careful inquiry was conducted, and Defendants provided no detailed factual or legal basis to support the decisions.

91.     Defendants' Grant Funding Denials are inconsistent with law, because Defendants relied on the unlawful April 2 Letters, or, alternatively, the Notice of Decision, to issue the Grant Funding Denials.

92.     The Grant Funding Denials are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Plaintiffs are therefore entitled to the relief requested below.

### COUNT FOUR: VIOLATION OF SMCRA, 30 U.S.C. § 1276(a)(1)

**Defendants' April 2 Letters, or, Alternatively, the Notice of Decision, Were Arbitrary, Capricious, and Otherwise Inconsistent with Law**

93.     Paragraphs 1 through 92 are incorporated herein by reference.

94.     Defendants' April 2 Letters, or, alternatively, the Notice of Decision, must be set aside if they are "arbitrary, capricious, or otherwise inconsistent with law."  30 U.S.C. § 1276(a).

23

95.     For the reasons set forth above, Defendants' April 2 Letters, or, alternatively, the Notice of Decision, are arbitrary, capricious, and otherwise inconsistent with law in violation of SMCRA, *id.* § 1276(a), entitling Plaintiffs to the relief requested below.

## COUNT FIVE: VIOLATION OF APA

**Defendants' April 2 Letters, or, Alternatively, the Notice of Decision, Failed To Satisfy APA Requirements for Rulemaking, or in the Alternative, for Adjudication**

96.     Paragraphs 1 through 95 are incorporated herein by reference.

97.     Defendants' April 2 Letters constituted "rulemaking" under the APA.

98.     Alternatively, Defendants' Notice of Decision constituted "rulemaking" under the APA.

99.     The APA requires the reviewing court to hold unlawful and set aside agency action, including rulemaking, which was undertaken "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

100.    All rules must be adopted in accordance with the APA.  *See id.* § 553.

101.    The APA defines "rulemaking" as the "agency process for formulating, amending, or repealing a rule."  *Id.* § 551(5).

102.    The APA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefore or of valuations, costs, or accounting, or practices bearing

on any of the foregoing." *Id.* § 551(4).  In short, an agency creates a rule when it seeks to "implement, interpret, or prescribe law or policy." *Id.*

103.    An agency action is a "rule" if it "supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy." *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014); *see also Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 100 (1995).

104.    The April 2 Letters, or, alternatively, the Notice of Decision, purporting to disapprove Oklahoma's SMCRA programs for the historic lands of the Muscogee (Creek) Nation and instead prepare a Federal program for those lands are final agency actions that fall within the definition of a "rule" because such an action constitutes both "a statement of general or particular applicability and future effect" which is "designed to implement, interpret, or prescribe law or policy . . . ." 5 U.S.C. § 551(4).  They also clearly "adopt[] a new position inconsistent with existing regulations" regarding the Oklahoma programs and "effect[]s a substantive change in existing law or policy." *Mendoza*, 754 F.3d at 1021; *see also Ohio River Valley Envtl. Coal., Inc. v. Kempthorne*, 473 F.3d 94, 102 (4th Cir. 2006) (holding that OSMRE's approval of a State program amendment constitutes "rulemaking" under the APA).

105.    The APA sets forth the process for rulemaking with which agencies must comply.  5 U.S.C. § 553.  First, an agency must give notice of a proposed rulemaking, published in the Federal Register.  *Id.* § 553(b).  The notice must include the date the rule will come into effect, the legal authority the agency has proposed the rule under, and the substance of the rule.  *Id.*  After notice is given, the agency is required to solicit and accept

public comments on the rule. *Id.* § 553(c). Finally, the agency must consider all comments that are submitted in passing the final rule and include a "general statement of [the rule's] basis and purpose." *Id.*

106. Defendants failed to comply with any of the requirements set forth in the APA. Defendants did not provide notice of the intended rulemaking, did not provide the opportunity for public comment, and did not prepare or publish a statement of the rule's basis and purpose. Moreover, there were no documented public hearings.

107. A rule promulgated through notice-and-comment rulemaking must also be revised or rescinded with notice and comment. Oklahoma's Title IV and Title V SMCRA programs were issued pursuant to notice-and-comment rulemaking in the first instance. Thus, the April 2 Letters, or, alternatively, the Notice of Decision, are unlawful because Defendants failed to comply with the APA's requirements for rulemaking.

108. In the alternative, Defendants' April 2 Letters, or, alternatively, the Notice of Decision, constitute adjudications and Defendants failed to comply with any of the requirements set forth in the APA for an adjudication.

109. Plaintiffs are permitted to challenge the April 2 Letters, or, alternatively, the Notice of Decision, under the APA because they have suffered a legal wrong and have been adversely affected and aggrieved because of Defendants' actions. *Id.* § 702.

110. Defendants' failure to follow the required procedures for either a rulemaking or an adjudication violates the APA, entitling Plaintiffs to the relief requested below.

## COUNT SIX: VIOLATION OF RIGHTS TO FUNDAMENTAL FAIRNESS AND DUE PROCESS

**Defendants' April 2 Letters, or, Alternatively, the Notice of Decision, and Grant Funding Denials Violated Plaintiffs' Rights to Fundamental Fairness and Due Process**

111.    Paragraphs 1 through 110 are incorporated herein by reference.

112.    For the reasons stated in the above Claims for Relief, Defendants' actions in issuing the April 2 Letters, or, alternatively, the Notice of Decision, and Grant Funding Denials violated Plaintiffs' rights to fundamental fairness and due process.

113.    Because Defendants' actions violated Plaintiffs' rights to fundamental fairness and due process, Plaintiffs are entitled to the relief requested below.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a)  A declaratory judgment, pursuant to 28 U.S.C. § 2201, that *McGirt* does not apply outside of the limited context expressly articulated by the Supreme Court and that Oklahoma has jurisdiction over surface coal mining and reclamation operations under Titles IV and V of SMCRA within the historic lands of the Muscogee (Creek) Nation;

b)  A declaratory judgment, pursuant to 28 U.S.C. § 2201, that Defendants' actions, as set forth above, are arbitrary and capricious, an abuse of discretion, and otherwise inconsistent with law;

c)  A declaratory judgment, pursuant to 28 U.S.C. § 2201, that the April 2 Letters, or, alternatively, the Notice of Decision, are unlawful because they were issued in violation of SMCRA and the APA;

d)  Vacate and set aside the April 2 Letters, or, alternatively, the Notice of Decision;

e)  Vacate and set aside the June 29, 2021 and July 8, 2021 Grant Funding Denials and require Defendants to allow continuing access to SMCRA-related grant funding already awarded;

f)  A preliminary and permanent injunction enjoining Defendants from denying further grant awards to ODM and OCC or amendments to existing grants on the basis of the April 2 Letters, or, alternatively, the Notice of Decision, or their reasoning;

g)  A preliminary and permanent injunction enjoining Defendants from implementing, enforcing, or otherwise proceeding on the basis of the April 2 Letters, or, alternatively, the Notice of Decision, and the Grant Funding Denials;

h)  Such other relief as the Court may deem just and proper.

Dated: January 10, 2022

Respectfully submitted,

s/ Elbert Lin

Ryan Leonard
EDINGER, LEONARD & BLAKLEY, PLLC
6301 North Western Avenue, Suite 250
Oklahoma City, OK 73118
Phone: (405) 367-0555
Rleonard@elbattorneys.com

*Counsel for Kevin Stitt, in his official capacity as Governor of Oklahoma*

Mithun Mansinghani
  *Solicitor General*
Bryan Cleveland
  *Assistant Solicitor General*
Jennifer Lewis
  *Assistant Attorney General*
OKLAHOMA OFFICE OF THE ATTORNEY
GENERAL
313 NE 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Mithun.mansinghani@oag.ok.gov

Elbert Lin (*Pro Hac Vice*)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Building
951 East Byrd Street
Richmond, VA 23219

28

Phone: (804) 788-7202
elin@HuntonAK.com

Matthew Z. Leopold (*Pro Hac Vice*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (808) 955-1500
mleopold@HuntonAK.com

David C. McSweeney
(OK Bar No. 31320)
(*Pro Hac Vice*)
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Phone: (617) 648-2800
dmcsweeney@HuntonAK.com

Melissa A. Romanzo (*Pro Hac Vice*)
HUNTON ANDREWS KURTH LLP
One South at the Plaza, Suite 3500
101 South Tryon Street
Charlotte, NC 28280
Phone: (704) 378-4700
mromanzo@HuntonAK.com

*Counsel for Plaintiffs*